```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

                                    )
                                    )
IN RE:  STERICYCLE, INC.,           )    Case No. 13 C 5795
STERISAFE CONTRACT LITIGATION       )    MDL No. 2455
                                    )
_____)
```

<u>MEMORANDUM ORDER</u>

This Court has been designated by the Panel on Multidistrict Litigation to preside over this MDL proceeding. As the first substantive step in that proceeding, the appointment of interim class counsel to represent the putative plaintiff class is called for. This memorandum order is issued to confirm this Court's choice of one from among the four well-qualified applicants for that appointment: in alphabetical order, Audet & Partners, LLP (linked with other firms), Gordon & Rees, LLP, Grant & Eisenhofer P.A. (linked with other firms) and Hagens Berman Sobol Shapiro LLP.

As indicated in the preceding paragraph, two of the four applicants have tendered proposals in which the law firms named in that paragraph would share the load with other firms, while each of Gordon & Rees and Hagens Berman proposes to take on and discharge the responsibility within the resources of its own firm. On September 18, in the course of an extended in court proceeding--a proceeding that culminated in this Court's ordering the applicant firms to supplement their earlier submissions by September 23 (as all four applicants have done since)--this

Court's oral articulation of its own views had expressed a strong preference for the single firm model, so long as that firm possessed the essential ingredients of high quality lawyering, extensive experience, a track record of significant successes, a lawyer complement adequate to the task--and the list of necessary ingredients could go on.[1]

This Court is of course well aware that Section 10.22 of the Federal Judicial Center's 2004 <u>Manual for Complex Litigation: Fourth</u> ("Manual") looks to a different pattern, with the form suggested in Manual §40.21.2 providing for the designation of lead counsel, liaison counsel and a Plaintiffs' Steering Committee. But with all due respect, that multilayered format is not one that fosters efficiency--instead it tends to promote a duplication of effort via conferencing, as well as overlapping work assignments and other inefficiencies too often attendant on such a structure. And that of course inevitably tends to increase the lodestar figure without any corresponding increase

---

[1] This should not at all be mistaken as a negative reflection on the quality of the two applicants that have sought to join with other firms. Although this Court has had no personal experience with any of the law firms sought to be yoked in the submission on behalf of the "Brucker Plaintiffs" (firms whose curriculum vitae are quite impressive), it has in the past dealt with Adam Levitt, the lead in-court presenter of the proposal on behalf of the "Midgley Plaintiffs," and attorney Levitt and his law firm have acquitted themselves most admirably in earlier litigation over which this Court presided. In sum, what the decision has come down to is a choice from among four well-qualified applicants (as this order has already said in its first paragraph).

in meaningful lawyer output.[2]

In any event, the choice between the two firms that do propose to act on a self-contained basis has been a difficult one. Each of them has impressive credentials to satisfy each of the factors identified in Fed. R. Civ. P. ("Rule") 23(g)(1)(A):[3]

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

And of course 23(g)(1)(B) understandably goes on to provide that the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

Both law firm finalists have tendered thorough and

---

[2] It is recognized that others may have different views, but it was not this Court that coined the aphorism that "A camel is a horse designed by a committee." What has been said in the text reflects a sense forged during this Court's many years in the practice of law (including class action participation on both sides of the "v." sign) and more years of evaluating applications for fee awards in class actions (a task that too often reveals an excess of lawyers seeking to share the wealth).

[3] Although those criteria reflect what a court "must consider" in the ultimate appointment of class counsel, they obviously have equal force in the designation of interim class counsel.

informative submissions as to each of the four criteria set out in Rule 23(g)(1)(A). Although this Court has vetted those presentations with equal thoroughness in reaching its decision, it sees no useful purpose to be served in detailing them here. Instead what follows will pick and choose some highlights simply to illustrate both candidates' first-rate credentials for potential appointment.

As for the first criterion, the Gordon & Rees team devoted nearly a year (since October 2012) to the investigation of Stericycle's assertedly questionable activities in California, an investigation that began after a Stericycle customer had come to the law firm complaining about the fees and charges the customer had been paying. As for Hagens Berman, it hit the ground running because counsel for a Stericycle insider (a former government specialist for that company)--having earlier filed a 2008 qui tam complaint under the False Claims Act--came to Hagens Berman to ask it to bring what ultimately became the <u>Lyndon Veterinary Clinic</u> action before this Court (13 C 2499). Because of its access to that whistleblower's perspective and the sharing of information with her qui tam counsel, Hagens Berman's Complaint provided more information than any other as to Stericycle's methodology and organizational structure. And Hagens Berman has since engaged in more active pursuit of the prosecution of the putative class' claims than Gordon & Rees (or the other two

candidates and their associated firms as well).

In terms of the second criterion under Rule 23(g)(1)(B), both competing firms (and especially their lead litigators) have sterling credentials. Gordon & Rees' Miles Clancy has a wealth of trial experience (incidentally including the defense as well as the prosecution of class actions). But it must be said that the track record of Hagens Berman and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation[4] and a substantial number of really outstanding big-ticket results.

It may be worth mentioning that to this Court's recollection it has had no first-hand judicial experience with either of the two finalist firms--and it has been on the bench far too long to have had litigation contact with either or their respective lead partners while it was in the active practice of law. But that is not true of its colleagues in this District of more recent vintage, an email inquiry to whom[5] brought in return some high praise of attorney Berman's skills.

---

[4] In that respect District Judges James Selna went out of his way, at the windup of the case, in describing the settlement as truly extraordinary--indeed unique--in terms of the benefits conferred on the plaintiff class.

[5] Under the Code of Conduct for United States Judges, judge-to-judge communications are not of course subject to the limitations applicable to other ex parte communications.

5

Little need be said as to the third factor mentioned in the Rule ("counsel's knowledge of the applicable law"), for lawyers of the quality demonstrated by the curriculum vitae that each of the two firms has supplied unquestionably have the tickets to bring their broad legal knowledge to bear on any particularized problems that may be posed by the current litigation. That is certainly true as to issues regarding class actions as such (knowledge that counsel already have in abundance), and there is no reason to believe that it will not also prove true as to whatever substantive issues the current litigation will pose.

Lastly, each firm has pledged itself to commit all required resources to the litigation. This Court's only initial pause in reaching what had otherwise appeared to be a clear choice of Hagens Berman[6] stemmed from the Gordon & Rees emphasis on that firm's much larger size and, more specifically, its Chicago presence (numbering 26 lawyers, in contrast to the Hagens Berman three-lawyer office here). But Hagens Berman's supplemental submission of September 23 has graphically demonstrated the

---

[6] That choice was not made in terms of the primus inter pares ("first among equals") phrase often used to describe, for example, the relationship between the Chief Judge of a District or Circuit Court and his or her colleagues. Instead, obviously with no offense intended, such a choice really echoes George Orwell's classic line from Animal Farm:

> Some animals are more equal than others.

6

fallacy inherent in simply looking at those numbers.[7]

For one thing, Elizabeth Fagan (the managing partner of Hagens Berman's Chicago office) has outstanding credentials on her own, and the Hagens Berman September 23 supplement confirms the strength of support provided by the others in the Chicago office as well. But even more importantly in overall terms, that September 23 response (emphasis in original) more than convincingly refutes any claimed significance of the sheer numerical comparison:

> According to Gordon & Rees' website, **just 3 of the 26** lawyers in its Chicago office have class action experience, in comparison to the three lawyers in Hagens Berman's Chicago office who are devoted **exclusively** to prosecuting large scale class actions. Moreover, according to the website, 49 lawyers at Gordon & Rees nationwide reflect that they have class action experience in comparison to the 53 lawyers at Hagens Berman whose **primary focus** is prosecuting class actions. Accordingly, Hagens Berman's class action dedication for plaintiffs--and demonstrated results--overshadows Gordon & Rees' traditional defense firm size.

<u>Conclusion</u>

In sum, this Court is pleased to designate the Hagens Berman firm as the interim lead counsel, and it looks forward to that

---

[7] This Court does not of course question the good faith of Gordon & Rees in advancing a numerical contrast as part of its own sales pitch. But again in terms of the raw numbers rather than Gordon & Rees' bona fides in advancing them, this Court has been put in mind of Mark Twain's quotation, in his <u>Autobiography</u>, of a statement attributed to Disraeli:

> There are three kinds of lies: lies, damned lies and statistics.

firm's prompt pursuit of the matter in the manner outlined in its submissions. With that appointment having taken place, this Court next poses a question to the Hagens Berman people.

As part of the firm's original application for appointment as interim lead class counsel, Appendix A to that application set out a proposed case schedule. But that proposed schedule specified its successive steps in terms of time frames such as "Within -- days of appointment of Lead Class Counsel," and it is not clear from that designation whether the stated timetable was intended to speak in relation to the current interim designation rather than to the final appointment of class counsel. Accordingly this Court orders a submission from the Hagens Berman firm, on or before the scheduled October 17 status hearing, expressly framed as a timetable in terms of the present posture of the litigation.

One final item. As part of the supplemental submissions requested by this Court on September 18, all of which were timely responded to by the designated September 23 date, counsel were asked to submit in camera their respective views on an appropriate fee structure. This Court's views on that subject have always conformed to our Court of Appeals concept "that attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services" (Silverman v. Motorola Solutions, Inc., Nos. 12-

2339 and 12-2354, 2013 WL 4082893, at *1 (7th Cir. Aug. 14), citing to In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992) and In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) and 325 F.3d 974, 975 (7th Cir 2003)). And this Court has always agreed with the Synthroid cases that establishing fee schedules ex ante represents the preferred path to take.[8]

But because interim counsel do not invariably become the ultimate class counsel (even though that is most frequently the case), this opinion will not disclose the proposed terms that have been submitted in camera by Hagens Berman. Instead any announcement of the ex ante determination as to fees will await the occasion of the ultimate choice of lead class counsel.

											_____
											Milton I. Shadur
											Senior United States District Judge

Date:  October 11, 2013

---

[8] Indeed, that premise seems to this Court to support a procedure of inviting bidding up front--not in terms of an "auction," an unfortunate and inaccurate label that connotes competition based on price alone, but rather a procedure that also takes into account an evaluation of the quality of class representation (much as this opinion has done). In fact, in these days, when the old notion of long-term fixed relationships between clients and law firms has been overtaken by market concepts (the so-called "beauty contest" is an example of that), private litigants frequently make their selections of counsel in much the same manner that this Court has employed in what are pejoratively and misleadingly characterized as "auctions."