UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:  STERICYCLE, INC., STERI-
SAFE CONTRACT LITIGATION

No. 13 C 5795
MDL No. 2455

Judge Milton Shadur

AGREED ORDER ESTABLISHING
ELECTRONIC DISCOVERY PROTOCOL

This Order establishes an Electronic Discovery Protocol ("ESI Protocol") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI in this case, and to promote, whenever possible, the resolution of disputes regarding the discovery of ESI without Court intervention.  This Order is not intended to address the scope of discovery, nor does it operate as a waiver by any party of any objections to discovery undertaken by other parties in this case, including but not limited to objections based on relevance, breadth, burden, or efforts to obtain potentially privileged or otherwise protected information.

I.     DEFINITIONS

A.     **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media. Non limiting examples of ESI include:

- Digital communications (e.g., e-mail, voice mail, instant messaging);

- E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB)

- Word processed documents (e.g., Word or WordPerfect files and drafts);

1

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);

- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound Recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., .AVI and .MOV files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint, Corel Presentations)

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Computer Aided Design/Drawing Files; and

- Backup and Archival Files (e.g., Veritas, Zip, .GHO)

- Cloud based or other virtualized ESI, including application, infrastructure and data

**B.** **"Native data format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

**C.** **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or

2

other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

D.     **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

E.     **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations — stored in any medium from which information can be obtained.

F.     **"Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

## II.     PRESERVATION

The parties will cooperate in good faith regarding their preservation obligations and needs, and agree that preservation of potentially relevant ESI should be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure ESI is preserved, the parties agree that to the extent ESI exists and consistent with the other provisions of this ESI Protocol and the parties' agreed Discovery Plan:

A) The parties will undertake reasonable efforts to identify and preserve potentially relevant ESI created or received between January 1, 2002 through the present.

B) Informed counsel for the parties will engage in cooperative discussions regarding the types of ESI they believe should be preserved and the data sources from which they believe ESI should be preserved.

C) ESI from data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will be preserved but will not be

3

accessed, searched, reviewed or produced, unless the parties agree otherwise or the court enters an order requiring that such data be accessed, searched, reviewed or produced.

## III. SEARCH TERMS FOR COLLECTING ELECTRONIC DOCUMENTS

The Parties will cooperate in good faith regarding appropriate search terms and protocols to be used prior to conducting any searches for the purpose of collecting relevant ESI for production in this case. With the objective of limiting the scope of review and production, and thereby reducing discovery burdens, the parties shall meet and confer as early as possible regarding, *inter alia*, search methodologies for retrieving or reviewing ESI such as identification of the custodians and/or systems to be searched; restrictions or limitations on the search; factors that limit the ability to search; the use of key word searches, with an agreement on the words or terms to be searched; and disclosure of all search terms and queries, including semantic synonyms. Semantic synonyms shall mean without limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to relevant ESI.

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate. This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests.

## IV. FORMAT OF PRODUCTION

A. **Native File Format.** Unless otherwise agreed to in writing by a requesting party, ESI shall be produced in native data format, as the ESI exists on the producing party's computer system. Where structured data (e.g., data from a database) is requested, appropriate queries will be used to extract relevant data from any such database, which data shall match specified criteria,

4

and returning specified fields, in a form and format that is verifiably responsive and readable by the use of commonly available tools. If a producing party asserts that certain ESI is inaccessible or otherwise unnecessary or inadvisable under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

**B.** **Document Image Format.** In such cases where the parties agree that production in native format is not appropriate (e.g., redacted documents), TIFF format files may be produced. Accompanying this TIFF shall be a multipage text (.TXT) file containing searchable text from the native file, and the metadata as discussed later in this document. The parties shall cooperate in good faith to identify an agreed list of fields that the parties are not obligated to populate manually if such fields cannot be extracted from a document, with the exception of the CUSTODIAN, VOLUME, and TIMEZONEPROCESSED, which shall be populated by the producing party. Load files of the static images should be created and produced together with their associated static images to facilitate the use of the produced images by a document management or litigation support database system. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

**C.** **Production of Structured Data.** To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties shall meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information and generate a

report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

If a producing party asserts that certain ESI is inaccessible or otherwise unnecessary or inadvisable under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

     **D.**    **Production of Physical Documents.** Documents or records which either were originally generated or instantiated as ESI but now only exist in physical hard-copy format, or documents or records that were originally generated in hard-copy format shall be converted to a single page .TIFF file and produced following the same protocols set forth herein or otherwise agreed to by the parties.

     **E.**    **Document Unitization.** For files not produced in their native format, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files.

     The producing party shall produce a unitization file ("load file") for all produced Documents in accordance with the following formatting, including a separate load file for native Documents:

     <u>**OCR and Extracted Text Files (.TXT Files)**</u>:

- Single text file per document containing all the document's pages

- Pages separated by form feed character (decimal 12, hex 0xC)

- Filenames should be of the form:

  <Bates num>.txt

  Where <Bates num> is the BATES number of the first page in the document.

- Text must be encoded in UTF-8.

**Images Files**:

- Single page per image

- Single image per file

- TIFF is default FORMAT unless the following formats are agreed to: jpeg, jpeg2000, giff, png, single image tiff, and bmp

- Filenames should be of the form:

  <Bates num>.<ext>

  Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc)

**Index Files**:

- Comma Separated Value (.CSV) files (commonly .DAT files)

- First line must contain the column/field names (set forth in Paragraph 1(c) herein)

- Every row must have the same number of columns/fields (empty values are acceptable)

- Text must be encoded in UTF-8

- Values must be enclosed by decimal 17, hex 0x11 (ascii device control 1)

- Values must be separated by decimal 19, hex 0x13 (ascii device control 3)

**Native Index Files**:

- .CSV files

- All lines contain data – first row must NOT contain column headers.

- Every row must have 2 columns/fields (empty values are NOT acceptable)

  - First column/field must contain the BATES number for the document

  - Second column/field must contain the filename (NOT the full path) of the native file.  Filenames must be unique in the production – unless the content is identical (for example, a native and an OCR text file may both be named XYZ01234567.TXT if they are identical).

- Text must be encoded in UTF-8

- Values must be enclosed by double quotes (ascii character 34)

- Values must be separated by a comma (ascii character 44)

**F.** **Duplicates.**  Removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA- 1 hash values at the document level) within a source (custodian). Where any such documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

**G.** **Color.**  For files not produced in their native format, if an original document contains color, the producing party may produce black and white image(s).  At the request of the receiving party, the parties shall meet and confer to discuss production of color image(s) for specific documents.

**H.** **Bates Numbering and Other Unique Identifiers**. For files not produced in their native format, each page of a produced document shall have a legible, unique page identifier

8

("Bates Number") electronically "burned" onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of the Protective Order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in a Protective Order, or materials redacted in accordance with applicable law or Court order, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. Any ESI produced in native data format shall be placed in a Logical Evidence Container that is Bates numbered, or the storage device (i.e., CD, USB, hard drive) containing such files shall be so Bates numbered. For purposes of further use in depositions, discussions or any court proceedings, the hash value of any document or ESI will constitute its unique controlling identifier. Alternately, if Bates numbers per document are desired, a spreadsheet may be created providing a Bates number to hash relationship.

      **I.**       **Production Media.** Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall include: (1) text referencing that it was produced in this matter, (2) the type of materials on the media (e.g., "Documents," "OCR Text," "Objective Coding," etc.), (3) the production date, and (4) the Bates number range of the materials contained on such Production Media item. The documents contained on the media shall be organized and identified by custodian, where applicable.

      **J.**       **Electronic Text Files.** For files not produced in their native format, text files for

produced documents shall be produced reflecting the full text that has been electronically extracted from the original, native electronic files ("Extracted Text"). The Extracted Text shall be provided in ASCII text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph II.I above, "Production Media". The text files will be named with the unique Bates number of the first page of the corresponding document followed by the extension ".txt."

     **K.**    **Metadata.** The production of Metadata produced will be provided in connection with native data format ESI requested, and includes without limitation, file, application and system metadata. Where non-native format data is produced, the Metadata fields identified and referenced in Paragraph IV(B), supra, will be extracted and produced (to the extent available).

     **L.**    **Attachments.** Email attachments and embedded files or links must be mapped to their parent by the Document or Production number. If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded document must be included.

     **M.**    **Microsoft "Auto" Feature and Macros for Documents Produced in TIFF Format.** Where reasonably possible with the assistance of computer technology, Microsoft Word (.doc), Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed or converted to TIFF would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the existence of such features on produced documents shall be identified in a reasonably useful manner, including but not limited to branding of the documents with the words "Auto Date," "Auto File

10

Name," "Auto File Path" or similar words that describe the "auto" feature.

**N.     Embedded Objects**. Objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents and treated like attachments to the document. Other objects embedded in documents shall be produced as native files.

**O.     Compressed Files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

## V.     OBJECTIONS TO ESI PRODUCTION

**A.**     For files not produced in their native format, documents that present imaging or format production problems shall be promptly identified and disclosed to the requesting party; the parties shall then meet and confer to attempt to resolve the problems.

**B.**     If either party objects to producing the requested information on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, and before asserting such an objection, the responding party will inform the requesting party of the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested form of production would impose an undue burden or is unreasonably costly, and afford the requesting party 10 business days from receipt of such notice to propose an alternative means of compliance with the request. Such proposal may include alternative cost estimates for ESI discovery production, may offer a proposal for ESI discovery cost allocation, or both. Notwithstanding anything contained herein to the contrary, a producing party shall not produce ESI in a format not requested or designated by the requesting

11

party unless (i) the parties have met and conferred, and, having been unable to resolve such format production conflict at such meet and confer session, (ii) prior to referral to and resolution of such issue by the court.

C. If a party believes that, at any time after the commencement of this action, relevant and responsive ESI becomes unavailable in its original format, or becomes irretrievable, the responding party shall, if known, explain where and when it was last retrievable in its original format, and disclose the circumstances surrounding the change in status of that ESI, including the date of such status change, the person or persons responsible for such state change, the reason or reasons such ESI is no longer retrievable in that format, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.

## VI. PRIVILEGE AND WORK PRODUCT CLAIMS

For any document withheld in its entirety or produced but redacted, the producing party will produce privilege/redaction logs in Excel format or any other format that permits electronic sorting and searching, except that the Parties shall have no obligation to log information generated after the date of commencement of this lawsuit. The parties shall produce privilege/redaction logs in accordance with the procedure set forth in the agreed Discovery Plan. When there is a chain of privileged e-mails, the producing party need only include one entry on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately. The producing party and the receiving party may modify the deadlines for production of privilege/redaction logs by agreement.

For each document withheld or redacted, the producing party's privilege/redaction logs shall include the following information:

(a) Custodian or source;

(b)     Date;

(c)     Author(s);

(d)     For documents produced, but redacted on the ground of privilege, the starting and ending Bates number;

(e)     Recipient(s), CC(s) and BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda);

(f)     Specification of the privilege claimed;

(g)     A description of the document and the basis for the privilege claim.

Following the receipt of a privilege/redaction log, a receiving party may identify, in writing, the particular documents that it believes require further explanation. Within fourteen (14) days of such identification, the producing party must respond to the request. If a party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

All other issues of privilege, including the production of privileged or protected documents or information, shall be governed by the Protective Order entered by the Court in this litigation. Officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

## VII. CATEGORIES OF ESI DISCOVERABLE ONLY UPON A SHOWING OF GOOD CAUSE

The following categories of ESI are discoverable only upon a showing of good cause: (1) "deleted," "slack," "fragmented," or "unallocated" data on hard drives; (2) random access memory (RAM) or other ephemeral data; (3) on-line access data such as temporary internet files, history, cache, cookies, etc.; (4) data in metadata fields that are frequently updated automatically, such as last-opened dates; and (5) backup data that is substantially duplicative of data that is

13

more accessible elsewhere.

## VIII. MISCELLANEOUS

A.      This Stipulated Order is not intended to govern any protections or restrictions related to the production of privileged litigation material. The Parties have separately addressed the process for handling the production of privileged litigation materials in the Agreed Confidentiality Order.

B.      Any documents recalled due to a mutually-agreed upon clawback provision shall have a specific protocol followed to ensure all copies of each such document are appropriately removed from the review system of the opposite party.

IT IS SO ORDERED:

Dated: _November 20, 2013_      _Milton S Shadur_
                                US District Judge

Submitted: November 19, 2013      Respectfully Submitted,

For Plaintiffs:                                    For Defendant:


By: /s/ *Steve W. Berman*                          By: /s/ *Raymond J. Etcheverry*
Steve W. Berman                                    Raymond J. Etcheverry (admitted pro hac
Jeffrey T. Sprung                                  vice)
Garth Wojtanowicz                                  Mark Glick (admitted pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP                    Juliette P. White (admitted pro hac vice)
1918 Eighth Ave., Suite 3300                       Cory Sinclair (admitted pro hac vice)
Seattle, WA 98101                                  PARSONS BEHLE & LATIMER
Telephone: (206) 623-7292                          Salt Lake City, Utah 84111
Facsimile: (206) 623-0594                          (801) 532-1234
E-mail: steve@hbsslaw.com                          E-mail: retcheverry@parsonsbehle.com
E-mail: jeffs@hbsslaw.com                          E-mail: mglick@parsonsbehle.com
E-mail: garthw@hbsslaw.com                         E-mail: jwhite@parsonsbehle.com
                                                   E-mail: csinclair@parsonsbehle.com



Elizabeth A. Fegan
Daniel J. Kurowski
Thomas Ahlering
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 W. Lake Street – Suite 400
Oak Park, IL 60301
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
E-mail: beth@hbsslaw.com
E-mail: dank@hbsslaw.com
E-mail: toma@hbsslaw.com

Paul E. Chronis
Elinor L. Hart
DUANE MORRIS LLP
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
(312) 499-6700
E-mail: PEChronis@duanemorris.com
E-mail: EHart@duanemorris.com