**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: STERICYCLE, INC., STERI-SAFE CONTRACT LITIGATION | Case No. 13 C 5795 MDL No. 2455 |
| | Judge Milton I. Shadur |
| MANHATTAN NURSING AND REHABILITATION CENTER, LLC, ET AL. | |
| Plaintiffs, | |
| vs. | |
| STERICYCLE, INC., | |
| Defendant. | |

<u>**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
MANHATTAN NURSING AND REHABILITATION CENTER, LLC, ET AL. FIRST
AMENDED COMPLAINT**</u>

Stericycle, Inc. ("Stericycle") by and through its counsel hereby answers Plaintiffs' First

Amended Complaint (the "Complaint") as follows:

<u>**NATURE OF ACTION**</u>

1.      This action arises from Stericycle's breach of its contracts with the Plaintiffs, all

of which hired Stericycle to dispose of their regulated medical waste. Stericycle, a publicly

traded medical waste disposal company with $1.9 billion in revenues in 2012, generates this

extraordinary revenue by programming its internal billing and accounting software to

automatically calculate large annual increases in the flat rates it charges its customers. The basis

for this "automated price increase" has never been disclosed to Plaintiffs, and it is not permitted by the Plaintiffs' contracts with Stericycle.

**ANSWER:**    Stericycle admits that it is a publicly traded medical waste disposal company which had revenues of $1.9 billion in 2012 and admits that it entered into various contracts with Plaintiffs and that its obligations are set forth in those contracts. Stericycle denies the remaining allegations of paragraph 1.

2.     Stericycle uses an internal electronic billing and accounting software system called Tower. Stericycle executives directed that the Tower system's programming default to an 18% "automated price increase" for "small-quantity," non-institutional customers. In 2012, these customers made up 97% of Stericycle's 541,000 customers worldwide. Plaintiffs are all "small-quantity" customers. The price increase appeared without notice or explanation on customers' invoices.

**ANSWER:**    Stericycle admits that it maintains certain electronic information relating to customers on a system formerly known as Tower. Stericycle further admits that certain customers at times received price increases and that some of those price increases were 18%. Stericycle denies the remaining allegations of paragraph 2.

3.     Stericycle's executives knew the automated price increases were improper, because in 2006 they were urged by their own Vice President to deprogram the Tower system in order to cease the practice with respect to federal governmental customers when several such customers learned of it. However, they continued the practice with regard to the vast majority of their customers.

**ANSWER:**    Stericycle denies the allegations of paragraph 3.

4.      Stericycle executives continued the practice because of the tremendous revenue generated from automated price increases in spite of recognizing at least seven years ago that it was improper. As an internal Stericycle e-mail states, "projected PI [Price Increase] revenue" was so big that it was separately tracked in "PI Impact analysis reports ... sen[t] to Mark/ Frank/Rich each month" - referring to Stericycle's three highest executives, CEO Mark Miller, CFO Frank Ten Brink, and COO Rich Kogler. The revenue stream from automated price increases was so great that Stericycle only modified its practice when forced by a multi-state government investigation.

**ANSWER:**   Stericycle admits that the phrases in quotation marks are contained in a Stericycle document.  Stericycle denies the remaining allegations of paragraph 4.

5.      Stericycle's automated price increases were imposed automatically by the company's electronic billing software on most of Stericycle's "small-quantity" medical waste disposal customers. Stericycle's practices regarding Plaintiffs constitute a common course of conduct based on a common nucleus of operative facts. The only material difference among Plaintiffs' claims is the amount of their actual damages. The operative customer contracts, standard form agreements written by Stericycle with no input from Plaintiffs, contained a choice-of-law clause applying Illinois law to all disputes.

**ANSWER:**   Stericycle admits that certain of its contracts contain a choice-of-law clause applying Illinois law.  Stericycle denies the allegations of paragraph 5.

6.      Plaintiffs seek relief from Stericycle for injuries caused by this common practice, including: (a) restitution; (b) compensatory damages; (c) punitive damages; (d) attorneys' fees;

(e) costs of this suit; (g) pre- and post-judgment interest; (g) injunctive relief; and (h) such other and further relief as this Court may deem necessary or proper.

**ANSWER:**   Stericycle admits that Plaintiffs seek the relief stated in Paragraph 6, but denies that Plaintiffs are entitled to such relief.

<u>**JURISDICTION AND VENUE**</u>

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (1) the amount in controversy exceeds $75,000 exclusive of interest and costs and (2) there is complete diversity of the parties.

**ANSWER:**   Stericycle admits the allegations of paragraph 7.

8.     This Court also has personal jurisdiction over Stericycle because it is authorized to do business in this state and has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of its services in this state.

**ANSWER:**   Stericycle admits the allegations of paragraph 8.

9.     Pursuant to 28 U.S.C. § 1391, venue is proper in the Southern District of Mississippi because Stericycle is found in this district, and/or is subject to personal jurisdiction in this district. Specifically, Stericycle is a party to contracts with Plaintiffs that own and operate retirement homes in this district.

**ANSWER:**   Stericycle admits the allegations of paragraph 9.

<u>**PARTIES**</u>

10.     All but two of the Plaintiffs are separate and distinct limited liability companies that have common members. Each Plaintiff entered into a contract with Stericycle. Plaintiffs

were subjected to automatic price increases and unnecessary and/or undisclosed fees arising out of Stericycle's wrongful conduct. Plaintiffs are advancing the same claims and legal theories governed by Illinois law. All Plaintiffs are seeking the same right to relief, and their claims arise from the same transaction or occurrence or series of transactions and occurrences. Questions of law and fact are common to all Plaintiffs.

**ANSWER:** Stericycle denies the first sentence of paragraph 10 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof. Stericycle admits that each Plaintiff entered into a contract with Stericycle. Stericycle denies the remaining allegations of paragraph 10.

11. Plaintiff Manhattan Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Jackson, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 11 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

12. Plaintiff Tupelo Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Tupelo, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 12 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

13. Plaintiff Brandon Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Brandon, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 13 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

14. Plaintiff Lakeland Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Jackson, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 14 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

15. Plaintiff Cleveland Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Cleveland, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 15 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

16. Plaintiff Ruleville Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Ruleville, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 16 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

17. Plaintiff Chadwick Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Jackson, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 17 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

18. Plaintiff McComb Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in McComb, Mississippi. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 18 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

19. Plaintiff Jonesboro Nursing and Rehabilitation Center, LLC, is a limited liability company that operates a nursing home in Jonesboro, Georgia. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 19 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

20. Plaintiff Douglasville Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Douglasville, Georgia. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 20 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

21. Plaintiff Lake City Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Lake City, Georgia. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 21 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

22.     Plaintiff Jonesboro Assisted Living Center, LLC is a limited liability company that operates an assisted living facility in Jonesboro, Georgia. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 22 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

23.     Plaintiff Birmingham Nursing and Rehabilitation Center East, LLC is a limited liability company that operates a nursing home in Birmingham, Alabama. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 23 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

24.     Plaintiff Birmingham Nursing and Rehabilitation Center, LLC formerly known as Forestdale Health Care Center is a limited liability company that operates a nursing home in Birmingham, Alabama. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 24 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

25.     Plaintiff Eight Mile Nursing and Rehabilitation Center, LLC d/b/a North Mobile Nursing and Rehabilitation Center is a limited liability company that operates a nursing home in Eight Mile, Alabama. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 25 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

26.     Plaintiff Mobile Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Mobile, Alabama. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 26 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

27.     Plaintiff Elba Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Elba, Alabama. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 27 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

28.     Plaintiff Fairfield Nursing and Rehabilitation Center, LLC is a limited liability company that formerly operated a nursing home in Birmingham, Alabama. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 28 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

29.     Plaintiff Florence Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Florence, Alabama. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 29 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

30.     Plaintiff Bernice Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Bernice, Louisiana. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 30 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

31. Plaintiff Ringgold Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Ringgold, Louisiana. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 31 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

32. Plaintiff Farmerville Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Farmerville, Louisiana. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 32 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

33. Plaintiff Natchitoches Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Natchitoches, Louisiana. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 33 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

34. Plaintiff Ruston Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Ruston, Louisiana. Its members are citizens of New York.

**ANSWER:** Stericycle denies the allegations of paragraph 34 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

35.     Plaintiff Winnfield Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Winnfield, Louisiana. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 35 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

36.     Plaintiff Arcadia Nursing and Rehabilitation Center, LLC d/b/a/ Willow Ridge Nursing and Rehabilitation Center is a limited liability company that operates a nursing home in Arcadia, Louisiana. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 36 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

37.     Plaintiff Jena Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Jena, Louisiana. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 37 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

38.     Plaintiff Quince Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Memphis, Tennessee. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 38 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

39.     Plaintiff Allenbrooke Nursing and Rehabilitation Center, LLC, is a limited liability company that operates a nursing home in Memphis, Tennessee. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 39 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

40.     Plaintiff Scenic Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Herculaneum, Missouri. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 40 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

41.     Plaintiff Jefferson City Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Jefferson City, Missouri. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 41 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

42.     Plaintiff Riverside Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Riverside, Missouri. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 42 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

43.     Plaintiff White Hall Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in White Hall, Illinois. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 43 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

44.     Plaintiff Calhoun Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Hardin, Illinois. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 44 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

45.     Plaintiff Granite Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Granite City, Illinois. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 45 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

46.     Plaintiff Stearns Nursing and Rehabilitation Center, LLC is a limited liability company that operates a nursing home in Granite City, Illinois. Its members are citizens of New York.

**ANSWER:**     Stericycle denies the allegations of paragraph 46 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

47.     Plaintiff Asbury, Inc. is a Tennessee not-for-profit 501(c)(3) corporation with its principal place of business in Tennessee. Asbury, Inc. does business as Asbury Place Maryville, Asbury Place Kingsport, Asbury Place Johnson City, and Asbury Place Steadman Hill.

**ANSWER:**     Stericycle denies the allegations of paragraph 47 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

48.     Plaintiff Christian Home for the Aged, Incorporated is a Tennessee not-for-profit 501(c)(3) corporation with its principal place of business in Tennessee. Christian Home for the

Aged, Incorporated does business as Appalachian Christian Village and Pine Oak Assisted Living.

**ANSWER:**    Stericycle denies the allegations of paragraph 48 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

49.    Stericycle is a Delaware corporation with its principal corporate offices located in Lake Forest, Illinois. Its registered agent for service of process is CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

**ANSWER:**    Stericycle admits the allegations of paragraph 49.

## GENERAL ALLEGATIONS

A.    **Stericycle and the Regulated Waste Disposal Business**

45.    Stericycle has been in the regulated medical waste business since 1989. Regulated medical waste is generally any medical waste that can cause an infectious disease and includes single-use disposable items such as needles, syringes, gloves, and other medical supplies; cultures and stocks of infectious agents; blood and blood products; and regulated pharmaceutical waste, which consists of expired or recalled pharmaceuticals.

**ANSWER:**    Stericycle admits the allegations of paragraph 45.

46.    The regulated medical waste services Stericycle provides include the waste disposal service product provided to the majority of its customers called the "Steri-Safe" program, which includes medical waste disposal, a clinical services program, reusable sharps disposal management services, pharmaceutical waste disposal, and hazardous waste disposal.

**ANSWER:**    Stericycle admits that the medical waste services it provides include the "Steri-Safe" program, medical waste disposal, a clinical services program, reusable sharps

disposal management services, pharmaceutical waste disposal, and hazardous waste disposal. Stericycle denies the remaining allegations of paragraph 46.

47.     Stericycle serves approximately 541,000 customers worldwide. It divides its customers into two categories, large-quantity and small-quantity waste generators. Large-quantity waste generators include hospitals, blood banks, and pharmaceutical manufacturers. Small-quantity waste generators are businesses such as outpatient medical clinics, medical and dental offices, long-term and sub-acute care facilities, veterinary offices, and retail pharmacies. Stericycle's small-quantity customers also include federal and state government agencies, municipalities, prisons, and jails.

**ANSWER:**     Stericycle denies the second sentence of paragraph 47.  Stericycle admits the remaining allegations of paragraph 47.

48.     Almost all of Stericycle's customers are small-quantity customers. Ninety-seven percent (524,500) of Stericycle's 541,000 customers worldwide in 2012 were small-quantity waste generators.

**ANSWER:**     Stericycle admits that a majority of its customers are small quantity generators but denies the remaining allegations of paragraph 48.

49.     A majority of Stericycle's revenues are from small-quantity customers. Stericycle had domestic revenues of $1.37 billion in 2012. Sixty-three percent, or $863 million, was from small-quantity customers. The majority of Stericycle's profits come from small-quantity customers. As stated in Stericycle's 2012 10-K, Stericycle achieved "higher gross margins . . . with our small-quantity customers relative to our large-quantity customers."

**ANSWER:**     Stericycle admits the allegations of paragraph 49.

50.     Stericycle uses both telemarketing and direct sales efforts to obtain new small-quantity customers. In addition, Stericycle's waste disposal drivers actively solicit small- quantity customers. In contrast, Stericycle's marketing efforts for large-quantity customers are conducted by account executives, service specialists, and healthcare compliance executives.

**ANSWER:**     Stericycle denies the allegations of paragraph 50.

51.     When Stericycle recruits a new small-quantity customer, whether from a cold call, client-initiated call, or through acquisition, Stericycle offers the customer Stericycle's standard form "Steri-Safe Service Agreement," which is a one- to five-year fixed-price agreement calling for specified monthly or quarterly waste pick-ups.

**ANSWER:**     Stericycle admits that certain of its customers enter into a Steri-Safe Service Agreement and that some of those Steri-Safe Service Agreements have terms of one to five years and require monthly or quarterly pickup of medical waste.  Stericycle denies the remaining allegations of paragraph 51.

52.     Customers for Stericycle's "Steri-Safe" service pay a predetermined subscription fee in advance for regulated waste collection and processing services. This service is for the purpose of satisfying the customer's obligations to dispose of medical waste in compliance with regulations of state and federal agencies, such as the Environmental Protection Agency and the Occupational Health and Safety Administration. The standard form Steri-Safe Service Agreement contains an automatic term renewal provision and does not expire absent affirmative action by the customer or Stericycle to terminate it.

**ANSWER:**     Stericycle admits that its Steri-Safe services are intended to satisfy a customer's obligations to dispose of medical waste in compliance with regulations of state and

federal agencies and that certain of its agreements contain automatic renewal provisions. Stericycle denies the remaining allegations of paragraph 52.

**B.**     **Stericycle's Standard Form "Steri-Safe Service Agreement"**

53.     The Steri-Safe Service Agreement is a standard form contract drafted by Steri-Safe with no input from the customer. The terms and conditions of the Steri-Safe Service Agreement, and all other written contracts offered by Stericycle, contain a choice-of-law provision that states that Illinois law governs any disputes between the parties to the contracts.

**ANSWER:**     Stericycle admits that certain of its agreements contain a choice of law provision stating that Illinois law governs any disputes between the parties to those contracts. Stericycle denies the remaining allegations of paragraph 53.

54.     The Steri-Safe Service Agreement consists of a cover sheet listing "Steri-Safe Program Benefits," fees, and a line for the customer's signature and a separate writing titled "Steri-Safe Terms and Conditions."

**ANSWER:**     Stericycle admits that certain of its Steri-Safe Service Agreements include a cover sheet listing "Steri-Safe Program Benefits," fees and a customer signature line and a separate page titled "Steri-Safe Terms and Conditions."   Stericycle denies the remaining allegations of paragraph 54.

55.     In general, the Steri-Safe Terms and Conditions require Stericycle to collect, transport, treat, and dispose of regulated medical waste generated by the customer during the term of the agreement.

**ANSWER:**     Stericycle admits the allegations of paragraph 55.

56.     The time period of a Steri-Safe Service Agreement typically ranges from 24 to 60 months from the effective date. However, the Terms and Conditions provide that the Service Agreement automatically renews for successive terms. To prevent automatic renewal, the customer must give 60 days' written notice of its desire to terminate the agreement, and the notice must be made during the six-month period prior to the renewal date. In addition to terminating the agreement by giving 60 days' written notice, a customer also has the right under the law to terminate the agreement if Stericycle materially breaches it.

**ANSWER:**     Stericycle admits that certain of its Steri-Safe Service Agreements may have terms of 24 to 60 months, that certain of its agreements may automatically renew for successive terms and that certain of its agreements may require the customer to give 60 days' notice within six months of the renewal date. Stericycle denies the remaining allegations of paragraph 56.

57.     The fees the customer must pay for medical waste pickup and disposal are listed on the cover page of the Service Agreement. Steri-Safe customers typically pay Stericycle a flat monthly or quarterly fee, the amount of which is expressly stated on the Service Agreement cover page.

**ANSWER:**     Stericycle admits that certain of its Steri-Safe Agreements provide the initial price for medical waste pickup and disposal on the cover page and that some of its customers pay a monthly or quarterly fee. Stericycle denies the remaining allegations of paragraph 57.

58.     Stericycle offers a "select" and a "preferred" Steri-Safe service package. Generally, the "select" service involves medical waste pickup and disposal and certain

educational resources, while the "preferred" service adds an OSHA compliance training, evaluation, and guarantee component.

**ANSWER:**    Stericycle admits the allegations of paragraph 58 of the Complaint.

59.    Section 2(b) of the Terms and Conditions addresses increases in the flat fee during the term of the contract. The operative language states:

> Stericycle reserves the right to adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, residue disposal, or to otherwise address cost escalation.

**ANSWER:**    Stericycle admits that certain of its contracts contain terms and conditions as quoted in paragraph 59.  Stericycle denies the remaining allegations of paragraph 59.

60.    The standard form Steri-Safe contract did not contain other language addressing Stericycle's right to increase the flat fee provided for on the cover page of the Steri-Safe Service Agreement.

**ANSWER:**    Stericycle denies the allegations of paragraph 60.

61.    In sum, the standard form Steri-Safe contract stated that Stericycle may increase its price only to account for increased costs necessary to comply with "documented changes in law" and "to cover increases in the cost of fuel, insurance, residue disposal, or to otherwise address cost escalation." The Steri-Safe contract renews automatically, obligating customers to continue to use Stericycle's services continuously unless they provide 60 days' notice of termination. However, the form Steri-Safe contract does not provide for an increase in the price the customer must pay upon expiration and renewal of the contract, and Stericycle must continue to provide that service at the contract price.

**ANSWER:** Stericycle admits that certain of its service contracts contain the language quoted in paragraph 61, that certain of its agreements may automatically renew for successive terms and that certain of its agreements may require the customer to give 60 days' notice within six months of the renewal date. Stericycle denies the remaining allegations of paragraph 61.

**C.** **Stericycle's Unlawful, Unilateral "Automated Price Increase" Policy**

62. During the relevant time period, Stericycle imposed frequent automated price increases ("API") on its small-quantity customers. At times Stericycle imposed APIs annually and at times more frequently, often every six to nine months. Stericycle also imposed an API on small-quantity customers, called transactional customers, that did not have a Steri-Safe Service Agreement and instead paid for waste disposal services under a different Stericycle form contract.

**ANSWER:** Stericycle admits that during the relevant period it increased prices to certain of its customers. Stericycle denies the remaining allegations of paragraph 62.

63. Stericycle's API policy was not disclosed to its customers and was not authorized by Stericycle's form contracts.

**ANSWER:** Stericycle denies the allegations of paragraph 63.

64. Stericycle concealed its API scheme from its customers and the public. In a deposition dated August 26, 2009, in a suit for improperly charging fuel and energy surcharges ultimately settled by Stericycle, its Chief Operating Officer, Richard Kogler, was asked under oath what "automated PI" meant. Mr. Kogler answered, "It means that it's automated within the system, so it's been preset according to the customer's contract." Automated price increases, however, were not authorized by customers' contracts, including Plaintiffs' contracts.

**ANSWER:** Stericycle admits that the quoted statement attributed to Mr. Kogler may be found in a deposition dated August 26, 2009. Stericycle denies the remaining allegations of paragraph 64.

65. Stericycle targeted small-quantity customers with its automated price increase policy (although some large-quantity customers paid APIs as well). Stericycle chose to target small- quantity customers because they were less sophisticated and typically received smaller bills from Stericycle than larger customers. Therefore, they were less likely to object to Stericycle's automatic price increases. They were also less likely to challenge whether the price increase was supported by an increase in Stericycle's actual costs.

**ANSWER:** Stericycle denies the allegations of paragraph 65.

66. Stericycle used an electronic financial accounting and reporting system named "Tower." Stericycle programmed the Tower financial reporting system to apply a periodic 18% price increase automatically to small-quantity customer accounts without regard to increases in Stericycle's actual costs. Stericycle charged small-quantity customers price increases periodically, often every six to nine months.

**ANSWER:** Stericycle admits it maintained certain electronic information related to customers on a system formerly known as Tower, that Tower referenced certain automatic price increases of 18% for small quantity customers. Stericycle denies the remaining allegations of paragraph 66.

67. Stericycle programmed Tower to default to an 18% API. While Stericycle's standard annual price increase for small-quantity customers was 18%, it charged some customers

other, varying price increases at different times during the year over the course of the relevant period.

**ANSWER:**    Stericycle admits that certain customers received 18% price increases and others received different price increases.   Stericycle denies the remaining allegations of paragraph 67.

68.    Tower contained multiple data fields, and a screen shot from the computerized Tower system could reflect a number of fields selected by the user. One field available on Tower is the percentage amount of the last price increase charged any particular customer. The price increases that Stericycle imposed on small-quantity customers can be determined from the electronic records contained in Stericycle's Tower financial reporting system.

**ANSWER:**    Stericycle admits the first sentence of paragraph 68 and further admits that the amounts paid by its respective customers may be determined from electronic information maintained by it.  Stericycle denies the remaining allegations of paragraph 68.

69.    In addition to the last price increase amount, the fields populated with data on Tower include, for example, "Last Price Inc[rease] Date," "PI [Price Increase] exempt," "PI [Price Increase] Max Amt (%)," "PI [Price Increase] Expire Date," and "PI [Price Increase] Reason Code." A screen shot from the Tower financial reporting system appears as follows:



**ANSWER:** Stericycle admits that Tower included the data headings listed in paragraph 69 and that paragraph 69 includes a screenshot with information contained in the Tower system. Stericycle denies the remaining allegations of paragraph 69.

70. In the screen shot copied in the foregoing paragraph, an API of 18% is evidenced in the field entitled "Last Price Inc. Amount."

**ANSWER:** Stericycle admits the allegations of paragraph 70.

71. The APIs were not based on Stericycle's actual cost increases. Nor were they based on cost increases for which contract price adjustments were authorized under the Service Agreements.

4851-6040-6554.1

23

**ANSWER:**    Stericycle denies the allegations of paragraph 71.

72.    Stericycle's cost increases for which contract price adjustments were authorized under the Service Agreements did not increase by 18% per year or by as much as the APIs.

**ANSWER:**    Stericycle denies the allegations of paragraph 72.

73.    Stericycle's costs fluctuated from year to year. Stericycle did not modify the amount of the automated price increase to reflect these fluctuations.

**ANSWER:**    Stericycle admits that its costs fluctuated from year to year but denies the remaining allegations of paragraph 73.

74.    Stericycle billed most small-quantity customers on a monthly basis. It sent customers an invoice that listed as a line item a description of the charge, which for most customers stated "Steri-Safe." The invoice then listed a corresponding flat fee, usually monthly, for the Steri-Safe service.

**ANSWER:**    Stericycle denies the allegations of paragraph 74.

75.    Although the vast majority of Stericycle's customers paid their bills notwithstanding the API, not all did so. Stericycle's business organization included two departments intended to persuade small-quantity customers to pay as much of the 18% API as possible.

**ANSWER:**    Stericycle denies the allegations of paragraph 75.

76.    Stericycle maintained a customer complaint department. When Stericycle implemented an API, this department routinely received a large number of complaints from small-quantity customers.

**ANSWER:**    Stericycle admits that it maintained a customer service department. Stericycle denies the remaining allegations of paragraph 76.

77.    Stericycle employed various false reasons to justify the API to customers, especially in the customer complaint department. When customers objected to the API, Stericycle employees were directed by management to use false justifications in an attempt to get these customers to accept and pay these increases.

**ANSWER:**    Stericycle denies the allegations of paragraph 77.

78.    Some customers refused to agree to Stericycle's API. Stericycle maintained a "customer retention" department to address these clients. Stericycle's practice was for the customer complaint department to refer to the customer retention department those customers who refused to agree to the API and threatened to terminate their relationship with Stericycle. For these customers, the retention department was authorized to offer a discount on the API.

**ANSWER:**    Stericycle admits that customers who were contemplating termination of their agreements, for a variety of reasons, were referred to the customer retention group and that the customer retention group was authorized to negotiate service and pricing issues with such customers.  Stericycle denies the remaining allegations of paragraph 78.

79.    Stericycle has been aware since 2004 that several governmental authorities considered Stericycle's APIs to be an improper practice. These authorities include New York City, the State of New Jersey, and the State of Washington. Based upon their objections, Stericycle formulated a written policy forbidding the use of the Steri-Safe agreement and the unauthorized API within these jurisdictions. Certain large valued corporate clients, dubbed "the

Nationals," were also exempted from APIs. Stericycle did not exempt its other customers, in particular its small-quantity customers such as Plaintiffs.

**ANSWER:**    Stericycle admits that certain jurisdictions required particular terms in contracts with customers in those jurisdictions.  Stericycle denies the remaining allegations of paragraph 79.

80.    The same Steri-Safe contract template was used for both private and governmental customers. By 2006, Stericycle executives were aware that federal government customers objected to Stericycle's API policy. As a result, in September 2006, Stericycle Vice President Patrick Cott sent an e-mail to his subordinates directing them to stop charging APIs to federal government customers.

**ANSWER:**    Stericycle admits that certain Steri-Safe contracts were not intended for use with certain federal government customers and that certain government customers were intended to be exempt from automatic price increases.  Stericycle denies the remaining allegations of paragraph 80.

81.    Stericycle understood that the terms of the Steri-Safe Service Agreement did not permit it to charge APIs, but Stericycle continued to charge small-quantity private sector customers with APIs.

**ANSWER:**    Stericycle denies the allegations of paragraph 81.

82.    Mr. Cott's e-mail disclosed the reason that Stericycle continued its API policy despite recognizing that it was unlawful: it generated a substantial revenue stream to Stericycle. Mr. Cott wrote to two subordinates: "Todd/Jerry - please be advised of the potential impact to the PI Impact Analysis reports that Courtenay sends to Mark/Frank/Rich each month, as these

accounts will no longer be in the mix for automated PIs and fuel charges, and **_thus you'll lose projected PI revenue with this change_**" (emphasis added).

**ANSWER:**    Stericycle admits the referenced language is contained in an email authored by Mr. Cott.  Stericycle denies the remaining allegations of paragraph 82.

**D.**    **The _Qui Tam_ Suit**

83.    _Qui tam_ Relator Jennifer Perez was hired by Stericycle as a temporary employee in 2004, but soon moved into a full-time position in the collections department. In that position, Perez realized that Stericycle was overbilling its customers. In 2006, Perez was promoted to the position of government specialist and was put in charge of preventing and resolving disputes with government customers.

**ANSWER:**    Stericycle admits the first sentence of paragraph 83 and admits that a part of Perez's responsibility included responding to concerns of certain government customers. Stericycle denies the remaining allegations of paragraph 83.

84.    Perez discovered that Stericycle was routinely billing all small-quantity customers, including government customers, with annual 18% increases and adding surcharges. This resulted in overcharges to these customers that were not permitted by their contracts.

**ANSWER:**    Stericycle denies the allegations of paragraph 84.

85.    Perez's supervisors routinely admitted to her that they were aware that Stericycle's API practices were improper, yet Stericycle continued these practices unabated.

**ANSWER:**    Stericycle denies the allegations of paragraph 85.

86.    On April 28, 2008, Perez filed a qui tam Complaint against Stericycle in the United States District Court for the Northern District of Illinois. She filed a First Amended _Qui_

*Tam* Complaint on June 28, 2010. Perez alleged that Stericycle had defrauded the United States, 14 states, and the District of Columbia by imposing an automatic periodic price increase in violation of its contracts with the governmental entities.

**ANSWER:**     Stericycle admits that Perez filed a Complaint with the referenced allegations.  Stericycle denies the remaining allegations of paragraph 86.

87.     Perez's claims on behalf of the United States, 13 states, and the District of Columbia are still pending.

**ANSWER:**     Stericycle admits the allegations of paragraph 87.

88.     On January 2, 2013, Stericycle settled the claims initiated by Perez with the Attorney General of the State of New York. In the Settlement Agreement, Stericycle admitted that "[d]uring the period January 1, 2003 through September 30, 2012, with respect to New York Government Customers, Stericycle presented invoices containing automatic price increases not authorized by contracts viz. automatic periodic rate increases (automated price increases or "APIs"), that resulted in overpayment for products and services."

**ANSWER:**     Stericycle admits that it entered into a Settlement Agreement with the State of New York on January 2, 2013.   Stericycle denies the remaining allegations of paragraph 88.

89.     The Settlement Agreement between Stericycle and New York provides that Stericycle will reimburse New York State for 100 percent of the charges resulting from automated price increases. In addition, Stericycle agreed to pay treble damages to New York State as a result of the automatic price increases.

**ANSWER:**     Stericycle denies the allegations of paragraph 89.

90.     In the Settlement Agreement, Stericycle agreed that, in the future, it would not apply any APIs to New York government customers. Any APIs applied to and paid by New York government customers after September 30, 2012 are required to be credited back to customer accounts.

**ANSWER:**     Stericycle admits the allegations of paragraph 90.

E.     **Plaintiffs' Experience With Stericycle's Automated Price Increases**

91.     All Plaintiffs entered into an agreement with Stericycle, and all Plaintiffs were subjected to Stericycle's wrongful automatic price increases.

**ANSWER:**     Stericycle admits that Plaintiffs entered into various agreements with Stericycle.  Stericycle denies the remaining allegations of paragraph 91.

92.     For example, Jonesboro Nursing and Rehabilitation Center, LLC ("Jonesboro") entered into a Steri-Safe Service Agreement with Stericycle on August 26, 2008. The Service Agreement provided that Jonesboro would pay Stericycle a flat monthly fee of $1,447.80.

**ANSWER:**     Stericycle admits that it entered into a Steri-Safe Service Agreement with Jonesboro on June 24, 2008.  Stericycle denies the remaining allegations of paragraph 92.

93.     By December 31, 2010, Stericycle had increased Jonesboro's monthly invoice to $2,186.67.

**ANSWER:**     Stericycle admits that its invoice to Jonesboro dated December 31, 2010 was in the amount of $2,186.67.  Stericycle avers that said invoice was pursuant to a separate Steri-Safe Service Agreement dated May 21, 2009.  Stericycle denies the remaining allegations of paragraph 93.

94.     Between December 31, 2010, and April 2013, Stericycle increased its monthly charge to Jonesboro six separate times.

**ANSWER:**     Stericycle admits the allegations of paragraph 94.

95.     In all, Stericycle increased the monthly fee it charged Jonesboro from $1,447.80 to $5,059.94 over the course of the contract's five-year term. This equates to an overall price increase of 249.49%.

**ANSWER:**     Stericycle admits that Jonesboro's prices were increased over time and avers that the later increases were pursuant to a separate contract dated March 6, 2013. Stericycle denies the remaining allegations of paragraph 95.

96.     The increases in the monthly charges to Jonesboro were not authorized by the Agreement between Jonesboro and Stericycle and constitute a material breach.

**ANSWER:**     Stericycle denies the allegations of paragraph 96.

97.     All of the other Plaintiffs were also subjected to unauthorized increases in Stericycle's monthly charges that constitute material breaches of their contracts with Stericycle.

**ANSWER:**     Stericycle denies the allegations of paragraph 97.

<u>**CAUSES OF ACTION**</u>

**COUNT I:**

**BREACH OF CONTRACT AND BREACH OF**
**THE COVENANT OF GOOD FAITH AND FAIR DEALING**

98.     Plaintiffs reallege and incorporate by reference the preceding allegations.

**ANSWER:**     Stericycle incorporates by reference its answers to paragraphs 1 through 97 above.

99.     Stericycle formed agreements and entered into valid and enforceable contracts with Plaintiffs, including offer, acceptance, and consideration. Stericycle provided Plaintiffs with a written standard form agreement drafted by Stericycle, and Plaintiffs accepted Stericycle's offer and exchanged consideration by using Stericycle's services and paying for them.

**ANSWER:**     Stericycle admits that Plaintiffs formed agreements and entered into valid and enforceable contracts including offer, acceptance and consideration and that certain Plaintiffs were provided a written standard form agreement drafted by Stericycle and that certain Plaintiffs accepted Stericycle's offer and exchanged consideration by using Stericycle's services and paying for them.  Stericycle denies the remaining allegations of paragraph 99.

100.     Plaintiffs have performed their obligations under their contracts with Stericycle.

**ANSWER:**     Stericycle denies the allegations of paragraph 100.

101.     Stericycle materially breached its agreements with Plaintiffs by imposing automated increases that were not permitted by the agreements.

**ANSWER:**     Stericycle denies the allegations of paragraph 101.

102.     Good faith is an element of every contract in Illinois and in the states where Plaintiffs operate nursing homes. All contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing are violated by a party's refusal to comply with contract terms despite knowledge that it was violating the contract and knowledge that refusal would result in serious damage. Interpreting a contract in an unreasonable manner constitutes bad faith and a violation of the implied obligation of good faith and fair dealing.

**ANSWER:**    Stericycle admits that in Illinois common law imposes upon all contracts an implied duty of good faith and fair dealing.  Stericycle denies the remaining allegations of paragraph 102.

103.    In this case, Stericycle engaged in the following conduct that breached its duty of good faith and fair dealing: (1) Stericycle charged automated price increases that were not authorized by its contracts with Plaintiffs; (2) Stericycle concealed the true reasons for APIs and adopted an organizational structure designed to maximize payment of APIs from customers who complained; and (3) Stericycle knew its practice of charging APIs was improper, had been rejected by governmental authorities, and was not authorized by its contracts with Plaintiffs, but it continued to impose APIs.

**ANSWER:**    Stericycle denies the allegations of paragraph 103.

104.    Plaintiffs had a reasonable and justified expectation that they would not be charged automated price increases in violation of their contracts with Stericycle and that Stericycle would calculate any increases in compliance with the contract terms. Stericycle breached the duty of good faith and fair dealing when it charged Plaintiffs APIs.

**ANSWER:**    Stericycle denies the allegations of paragraph 104.

105.    As a direct and proximate result of Stericycle's material breach of the agreements with Plaintiffs and of the covenant of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial.

**ANSWER:**    Stericycle denies the allegations of paragraph 105.

**COUNT II:**

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/1 ET SEQ., AND ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS § 510/2, AND DECEPTIVE TRADE AND CONSUMER PROTECTION LAWS OF OTHER STATES**

106.     Plaintiffs reallege and incorporate by reference the preceding allegations.

**ANSWER:**     Stericycle incorporates by reference its answers to paragraphs 1 through 105 above.

107.     Stericycle engaged in an unfair and deceptive act or practice by imposing automated price increases. Stericycle knew that its practice was not authorized by its contracts with Plaintiffs, but it nevertheless used various forms of pressure and trickery to force small-quantity customers to pay as much as possible.

**ANSWER:**     Stericycle denies the allegations of paragraph 107.

108.     Stericycle concealed materials facts from Plaintiffs. Stericycle's scheme included concealing that it used an automated price increase algorithm in its computer system to increase customers' fees, giving customers fabricated rationales for price increases, and offering discounts on APIs only to complaining customers and only if they threatened to cease using Stericycle's services. Stericycle's practice offended public policy, was immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

**ANSWER:**     Stericycle denies the allegations of paragraph 108.

109.     Plaintiffs would have acted differently if they had known that Stericycle intended to impose APIs, and the imposition of APIs is the type of information upon which a buyer would be expected to rely in making a decision whether to purchase. Plaintiffs would have wanted to know that Stericycle imposed automated increases that bore no relation to its actual costs, and

this information would have changed their decision, and any reasonable customer's decision, to use Stericycle's services. Stericycle intended that Plaintiffs would rely on the contract terms that their fees would be properly calculated for the term of the contract and only increase for the reasons stated in the contract. Plaintiffs paid higher fees than the contracts authorized as a result of Stericycle's APIs.

**ANSWER:** Stericycle denies the allegations of paragraph 109.

110.    Stericycle's conduct is a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2. As a violation of Section 2 of the Illinois Uniform Deceptive Trade Practices Act, Stericycle's conduct is also a violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2.

**ANSWER:** Stericycle denies the allegations of paragraph 110.

111.    Stericycle's unfair or deceptive act or practice occurred in the course of conduct involving trade or commerce.

**ANSWER:** Stericycle admits that the conduct alleged herein involved trade or commerce. Stericycle denies the remaining allegations of paragraph 111.

112.    Stericycle's consumer fraud proximately caused injury to Plaintiffs.

**ANSWER:** Stericycle denies the allegations of paragraph 112.

113.    Pursuant to 815 ILCS § 505/10a, Plaintiffs are entitled to actual damages, punitive damages, and reasonable attorneys' fees and costs, as well as any other relief the Court deems proper.

**ANSWER:** Stericycle denies the allegations of paragraph 113.

114.    Alternatively, Stericycle's conduct is a violation of the applicable deceptive trade and consumer protection laws of the states in which Plaintiffs operate nursing homes.

**ANSWER:**    Stericycle denies the allegations of paragraph 114.

**COUNT III:**

**UNJUST ENRICHMENT**

115.    Plaintiffs reallege and incorporate by reference the preceding allegations.

**ANSWER:**    Stericycle incorporates by reference its answers to paragraphs 1 through 114 above.

116.    Stericycle has unjustly retained a benefit to the detriment of Plaintiffs. Stericycle imposed unlawful APIs on Plaintiffs, and Plaintiffs paid fees to Stericycle inflated by Stericycle's APIs. Stericycle obtained money paid by Plaintiffs to which Stericycle is not entitled.

**ANSWER:**    Stericycle denies the allegations of paragraph 116.

117.    Stericycle's retention of the benefit violates fundamental principles of justice, equity and good conscience.

**ANSWER:**    Stericycle denies the allegations of paragraph 117.

118.    As a direct and proximate result of Defendant's practice of imposing APIs, Plaintiffs have suffered damages in an amount to be proven at trial.

**ANSWER:**    Stericycle denies the allegations of paragraph 118.

**COUNT IV:**

**FRAUD**

119.    Plaintiffs reallege and incorporate by reference the preceding allegations.

**ANSWER:**    Stericycle incorporates by reference its answers to paragraphs 1 through 118 above.

120.    Stericycle made false statements of material fact to Plaintiffs when it committed in its contracts that it would charge fees pursuant to the terms of the contracts. Stericycle knew that it would not charge the fee stated in its contracts, and instead that it would impose APIs on Plaintiffs. Stericycle made the promise that it would calculate any increase in fees in compliance with the contract terms with no intention to perform it.

**ANSWER:**    Stericycle denies the allegations of paragraph 120.

121.    Stericycle intended that Plaintiffs would agree to use Stericycle's services based on the fee expressly stated in its contracts. Stericycle intended that its stated fee would induce Plaintiffs to act. Plaintiffs relied on the fee as stated in their contracts with Stericycle and expected that Stericycle would properly calculate that fee, subject to the limited conditions in which Stericycle could increase it. Instead, Stericycle charged Plaintiffs APIs, and the APIs damaged Plaintiffs.

**ANSWER:**    Stericycle denies the allegations of paragraph 121.

122.    Stericycle concealed that it did not intend to, and did not, charge Plaintiffs the fee stated in their contracts, and instead intended to, and did, charge Plaintiffs APIs. Stericycle concealed that it had a policy of charging APIs and that its APIs were not the result of actual cost increases resulting from operational changes implemented to comply with changes in law or specific increases in actual costs. Stericycle concealed that it used an automated price increase algorithm in its computer system to increase customers' fees. Stericycle was under a duty to disclose these facts, and its failure to do so deceived Plaintiffs.

**ANSWER:** Stericycle denies the allegations of paragraph 122.

123. As a direct and proximate result of Stericycle's fraud, Plaintiffs have suffered actual damages in an amount to be proven at trial and are also entitled to punitive damages.

**ANSWER:** Stericycle denies the allegations of paragraph 123.

## AFFIRTMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, because the allegations supporting certain of the Causes of Action asserted in the Complaint fail to state a claim upon which relief may be granted as required by Federal Rule of Civil Procedure 12(b). For example, Count II fails to state a claim because it is nothing more than a restatement of Plaintiffs' breach of contract claim in Count I, and because the allegations do not support a private right of action for non-Illinois residents. Count II and IV fail to state a claim because Plaintiffs' allegations are grounded in fraud and Plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

### SECOND AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, by the applicable statutes of limitation. Specifically, with respect to Count I, Plaintiffs entered into contracts with Stericycle and Stericycle allegedly breached its contracts with them by imposing allegedly improper price increases and/or surcharges prior to the applicable 10-year statute of limitations in Illinois (735 ILCS 5/13-206) or, if applicable, any other state where Plaintiffs operate nursing homes. With respect to Counts II through IV, the causes of action accrued prior to the applicable statutes of limitation, and there is no basis for tolling of those statutes of limitation. *See, e.g.*, Count II, 3

years (815 ILCS 505/10a) or, if applicable, the statutes of limitation for deceptive trade and consumer protection laws of any other states where Plaintiffs operate nursing homes (including without limitation all statutes of limitation identified in Stericycle's Answer and Affirmative Defenses to First Amended Consolidated Complaint); Count III, 5 years (735 ILCS 5/13-205) or, if applicable, the statutes of limitation in any other states where Plaintiffs operate nursing homes; and Count IV, 5 years (735 ILCS 5/13-205) or, if applicable, the statutes of limitation in any other states where Plaintiffs operate nursing homes.

## THIRD AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, to the extent any of their causes of action are brought in a forum and/or pursuant to a state law that violates the forum-selection clause and/or choice of law provision contained in the applicable contract between each Plaintiff and Stericycle.

## FOURTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, by the doctrine of accord and satisfaction because certain Plaintiffs submitted payments to Stericycle at various times pursuant to a shared intent to settle a bona fide dispute over an unliquidated amount owed to Stericycle pursuant to allegedly improper price increases and/or surcharges, and Stericycle accepted those payments as full satisfaction of Plaintiffs' contractual obligations.

## FIFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, because a novation occurred when certain Plaintiffs at various times entered into a new, valid, contract with Stericycle by mutual

agreement that contained new pricing terms, and which extinguished their prior contract with Stericycle and any prior debt obligations owed to Stericycle thereunder.

## SIXTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, by the doctrine of estoppel because, at various times, each of them intentionally paid outstanding invoices owed to Stericycle knowing that they contained allegedly improper price increases and/or surcharges, Stericycle reasonably relied upon those payments as evidence of Plaintiffs' consent to the price increases and/or surcharges and, as a result, Stericycle relied to its detriment and continued to provide services to Plaintiffs and incur the costs associated with those services pursuant to their contracts.

## SEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, because at various times each of them intentionally and knowingly waived their right to contest the allegedly improper price increases and/or surcharges either when they contacted Stericycle to discuss the allegedly improper price increases and/or surcharges and thereafter agreed to the existing or new price terms in their contracts, or when they continued to pay their invoices to Stericycle and demand that Stericycle continue to provide services to them pursuant to the contract without disputing the allegedly improper price increases and/or surcharges.

## EIGHTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, by the doctrine of laches because at various times each of them received invoices from Stericycle knowing that they contained allegedly improper price increases and/or surcharges and they engaged in undue delay and an

unreasonable lack of diligence by failing to take any action to dispute the allegedly improper price increases and/or surcharges and, instead, continued to pay their invoices and acquiesce to the new prices for a significant period of time, which prejudiced Stericycle by leading Stericycle to continue to provide services to Plaintiffs and incur the costs associated with those services with the expectation that Plaintiffs would continue to pay the invoiced price for those services pursuant to their contracts with Stericycle.

## NINTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, because Stericycle provided services for the benefit of Plaintiffs pursuant to their contracts, and, to the extent Stericycle's invoices contained allegedly improper price increases and surcharges, Plaintiffs ratified Stericycle's services and pricing by either expressly ratifying Stericycle's conduct or implicitly acquiescing in and failing to repudiate Stericycle's conduct.

## TENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, by the voluntary payment doctrine because, at various times, Plaintiffs received invoices demanding payment of amounts due to Stericycle for its services that included allegedly improper price increases and/or surcharges, and Plaintiffs voluntarily paid those invoiced amounts due to Stericycle under Stericycle's claim of right to payment for the services it provided with full knowledge of the facts surrounding the claim of right to payment and without compulsion or duress.

## ELEVENTH AFFIRMATIVE DEFENSE

Certain of the Plaintiffs' claims are barred, in whole or in part, because they previously entered into a valid agreement with Stericycle whereby they intentionally and knowingly

released Stericycle from liability for any claimed damages due to allegedly improper fees or price increases.

## TWELFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred, in whole or in part, because Plaintiffs failed to mitigate their own damages when they voluntarily paid Stericycle for invoiced amounts due that included allegedly improper price increases and/or surcharges without (i) attempting to have the charges reduced by contacting Stericycle to dispute or negotiate the allegedly improper price increases and/or surcharges, (ii) without attempting to terminate their contract with Stericycle to avoid the allegedly improper charges, and/or (iii) without attempting to obtain substitute arrangements for services from someone other than Stericycle.

## THIRTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred to the extent the contract between any Plaintiff and Stericycle contains a provision requiring all disputes between the parties be submitted to arbitration.

Stericycle is presently without knowledge or information sufficient to form a belief as to whether it has additional, yet unasserted, affirmative defenses. Stericycle therefore reserves the right to assert additional affirmative defenses if it acquires knowledge or information supporting such defenses.

WHEREFORE, Stericycle prays that Plaintiffs' First Amended Complaint and each and every cause of action alleged therein be dismissed with prejudice, that it be awarded its costs and attorneys' fees incurred herein and the Court award such other and further relief as it deems just in the premises.

DATED this _29th_ day of May, 2014.

STERICYCLE, INC.

By  /s/ Raymond J. Etcheverry

Paul E. Chronis                      Raymond J. Etcheverry (admitted *pro hac vice*)
Elinor L. Hart                       Mark Glick (admitted *pro hac vice*)
Duane Morris LLP                     Juliette P. White (admitted *pro hac vice*)
190 S. LaSalle Street, Suite 3700    Cory Sinclair (admitted *pro hac vice*)
Chicago, Illinois 60603              Parsons Behle & Latimer
(312) 499-6700                       Salt Lake City, Utah 84111
Email: PEChronis@duanemorris.com     (801) 532-1234
EHart@duanemorris.com                Email: retcheverry@parsonsbehle.com
                                     mglick@parsonsbehle.com
*Counsel for Defendant Stericycle, Inc.*    jwhite@parsonsbehle.com
                                     csinclair@parsonsbehle.com

                                     *Counsel for Defendant Stericycle, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the _29th_ day of May, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Raymond J. Etcheverry

## CERTIFICATE OF MAILING

I hereby certify that on the _29th_ day of May, 2014, I caused to be mailed, first class, postage prepaid, a true and correct copy of the foregoing **ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT** to:

Brooks Eason
W. Davis Frye
Samuel D. Gregory
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Meadowbrook Office Park
4268 I-55 North
Jackson, Mississippi 39211

/s/ Raymond J. Etcheverry