**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | |
|---|---|
| IN RE: STERICYCLE, INC., STERI-SAFE CONTRACT LITIGATION | Case No.: 1:13-cv-05795 |
| JAMES J. MAZUR, DPM, and JAMES MAZUR, D.P.M., P.A., on behalf of themselves and all other individuals and entities similarly situated, | MDL No. 2455 |
| Plaintiffs, | Judge Milton I. Shadur |
| vs. | |
| STERICYCLE, INC., | |
| Defendant. | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS JAMES J. MAZUR'S AND JAMES MAZUR D.P.M., P.A.'S
COMPLAINT**

Stericycle, Inc. ("Stericycle"), by and through its counsel, hereby answers Plaintiffs'

Complaint ("the Complaint") as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this lawsuit on behalf of themselves and on behalf of all similarly

situated individuals and entities in North Carolina who contracted with Stericycle, except those

specifically excluded below in the Class Representation Allegations, for injuries caused by

Stericycle's fraudulent, misleading and wrongful conduct associated with overbilling for their

services.  That conduct and the resulting legal claims arising from it are detailed below.

ANSWER:  Stericycle admits that Plaintiffs purport to bring this action to seek judicial

relief from Stericycle.  Stericycle denies the remaining allegations of paragraph 1.

2.      Stericycle is a large publically-traded company that has been in the medical waste collection and disposal industry since 1989.  Stericycle provides medical waste collection and disposal services for medical clinics, veterinary clinics, medical labs, municipal jails, and other businesses that generate regulated medical waste worldwide.  Stericycle's business generates substantial revenues—in 2012, it posted $1.9 billion in revenue.

ANSWER:  Stericycle admits the allegations of paragraph 2.

3.      When Stericycle picks up a new customer, Stericycle offers its standard agreement, called the Steri-Safe Contract (the "Standard Contract"), which is a one to five-year fixed-price agreement for monthly or quarterly waste pick-up.

ANSWER:  Stericycle admits that at times it offers customers certain agreements called Steri-Safe agreements. Stericycle avers that the length of the contract term and the frequency of pickups vary according to the individual customer. Stericycle denies the remaining allegations and characterizations of paragraph 3.

4.      Stericycle quotes the customer a monthly pick-up rate and agrees to this rate in the Standard Contract.  But Stericycle fails to inform its customer that even the first bill the customer receives is going to be greater than what the Standard Contract called for.

ANSWER:  Stericycle admits that it quotes rates for customers and that rates are included in its contracts with the customer. Stericycle denies the remaining allegations and characterizations of paragraph 4.

5.      Stericycle uses an internal electronic billing and account software system called Tower.  Stericycle executives directed that the Tower system's programming default to an 18%

2

automated price increase for small-quantity, non-institutional customers, which in 2012, made up 97% of Stericycle's 541,000 customer worldwide.

ANSWER:  Stericycle admits that it maintained certain electronic information relating to customers on a system formerly known as "Tower."  Stericycle further admits that certain customers, at times, received price increases, and that some of those price increases were 18%. Stericycle denies the remaining allegations of paragraph 5.

6.      On April 28, 2008, a former Stericycle employee named Jennifer D. Perez as a Relator filed a False Claims Act "qui tam" action on behalf of the United States of America in the United States District Court for the Northern District of Illinois (hereinafter referred to as the "Qui Tam Complaint").  The complaint alleged that Ms. Perez personally witnessed Stericycle routinely adding undisclosed charges to its customers' bills.  She had been hired by Stericycle as a temp and soon moved into a full-time position in the collections department.  Ms. Perez noticed that Stericycle was billing the federal accounts in violation of the federal acquisition regulations. In 2006, she was promoted to the position of government specialist, and was put in charge of resolving and preventing disputes with the federal accounts.

ANSWER:  Stericycle admits that Jennifer D. Perez is a former Stericycle employee who had been hired by Stericycle as a temporary employee but later moved into a full-time position in the collections department. Stericycle further admits that Ms. Perez filed a complaint with the referenced allegations.  Stericycle denies the allegations in Ms. Perez's complaint and denies the remaining allegations of paragraph 6.

4816-1842-9731.2

7.      Ms. Perez discovered that Stericycle was routinely billing all small-quantity customers, including government customers, the periodic 18% increases, surcharges, as well as billing the government in advance of service.

ANSWER:  Stericycle denies the allegations of paragraph 7.

8.      The Qui Tam Complaint alleged based on the Relator's personal knowledge how Stericycle, as part of its billing routine, adds 'fuel and energy' surcharges to each bill, without disclosing this to the customer during negotiations.  These fuel and energy surcharges bear no relationship toward Stericycle's actual costs regarding the particular customer.  This is demonstrated by the fact that Stericycle will add on these surcharges during periods when there have been no pick-ups, even for years.  And within 9 months, and every 9 month period hence, the entire bill, (the monthly rate plus surcharges), is subjected to an 18% increase.

ANSWER:   Stericycle admits that Ms. Perez's complaint makes the allegations referenced in paragraph 8.  Stericycle denies the allegations in Ms. Perez's complaint and denies the remaining allegations of paragraph 8.

9.      Stericyle falsely represented to Plaintiffs and the other class members that rates in the Standard Contract would remain fixed over its tenure, when in fact the rates were unilaterally increased by 18% or more every 9 to 12 months without justification.

ANSWER:  Stericycle denies the allegations of paragraph 9.

10.     Stericycle breached the Standard Contract with Plaintiffs and other similarly situation [sic] by regularly and systematically raising its prices without any explanation or justification and without prior notice, of the price increase.  Stericycle unlawfully and fraudulently misled customers about its pricing and billing practices and induced them to become

4

or remain customers by falsely representing that the rates for its services were fixed, failing to disclose its practice of arbitrarily increasing prices, failing to notify customers that prices had increased, and lying about the reasons for price increases when challenged.

ANSWER:  Stericycle denies the allegations of paragraph 10.

## PARTIES

11.     Plaintiff J. Mazur is a doctor of podiatric medicine and a citizen of North Carolina who resides in Salisbury, North Carolina.  He operates a privately-owned medical practice, James Mazur, D.P.M., P.A., which is also a Plaintiff to this action, and is located at 322 Mocksville Ave., Salisbury, North Carolina 28144.  Dr. Mazur's practice focuses on serving and caring for needful medical patients and ordinarily relies on and trusts its third party vendors to be truthful and to act in good faith in their business dealings with the practice.  As part of his practice, Dr. Mazur's office has to dispose of medical waste collected or obtained while treating patients.

ANSWER:   Stericycle admits that Plaintiff James Mazur is a physician practicing medicine in North Carolina.  Stericycle denies the remaining allegations of paragraph 11 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

12.     Defendant, Stericyle, is a Delaware corporation with a principal place of business located at 28161 North Keith Drive, Lake Forest, Illinois.  Its registered agent is located at CT Corporation System, 150 Fayetteville Street, Box 1011, Raleigh, NC 27601-2957.   At all materials times, Stericycle has operated a medical waste removal and transportation service in North Carolina for businesses such as Plaintiffs'.

ANSWER:  Stericycle admits the allegations of paragraph 12.

4816-1842-9731.2

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiffs, as well as the members of the proposed class, are citizens of states different from the state of Defendant.

ANSWER:  Stericycle admits the allegations of paragraph 13.

14.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiffs are citizens of the District and entered into the Standard Contract in this District.  This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contracts with North Carolina in that it has conducted and continues to conduct business in the State of North Carolina or otherwise availed itself of the North Carolina market through medical waste removal and transportation services sufficient to render the exercise of personal jurisdiction over them by this Court consistent with traditional notions of fair play and substantial justice.

ANSWER:  Stericycle avers that venue is appropriate in the Northern District of Illinois, to which this case was recently transferred for inclusion in the *In re Stericycle, Inc., Steri-Safe Contract Litigation*, MDL No. 2455, consolidated proceedings. Stericycle denies the remaining allegations of paragraph 14.

**FACTS CONCERNING THE CLASS REPRESENTATIVE**

15.     Plaintiff, Dr. James J. Mazur, is a doctor of podiatric medicine with a privately-owned medical practice based in Salisbury, North Carolina, known as James Mazur, D.P.M.,

P.A. As part of his practice, Plaintiffs have need for safe removal of medical waste, including drugs and medical supplies.

ANSWER: Stericycle admits that Plaintiff James Mazur is a physician practicing medicine in North Carolina. Stericycle denies the remaining allegations of paragraph 15 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

16.     In mid-2003, Dr. Mazur contracted with Stericycle for medical waste pick-up services on a month-to-month basis. At the time, Stericycle charged Plaintiffs approximately $35.00 a month to remove medical waste. Between mid-2003 and 2008, the amount billed by Stericycle on a monthly basis fluctuated minimally and was even occasionally less than $35.00. In 2008, the price for removal increased to approximately $71.16 per month. The actual amount billed each month continued to fluctuate relatively minimally on a frequent basis.

ANSWER: Stericycle admits that in late 2003, Plaintiffs began receiving medical waste pick-up services from Stericycle. Stericycle denies the remaining allegations of paragraph 16.

17.     On or about May 2013, Lauren Kokenes, a sales representative from Stericycle, emailed Plaintiffs a new contract offer that would remain fixed at $139.00 per month, for four container pick-ups per year if he agreed to enter into the Standard Contract.

ANSWER: Stericycle admits that a contract was presented to Plaintiffs in May 2013. Stericycle denies the remaining allegations in paragraph 17.

18.     On or about May 2013, Stericycle emailed a copy of the Standard Contract to Plaintiffs. The Standard Contract required customers to agree to a 60-month (or five year) term which automatically renewed unless either party terminated the agreement in the manner stated

4816-1842-9731.2

in the Standard Contract. In paragraph 2 – "Terms and Pricing"—the Standard Contract set forth

the pricing terms:

> Subject to the provisions below, the term ("Term") of this Agreement shall be 60 months from the Effective Date. (a) This agreement shall automatically renew for successive terms equal to the original Term (each an "Extension Term") unless either party has given sixty (60) days notice, in writing, during the six (6) month period prior to the renewal date of its desire to terminate this agreement. All Extension Terms shall be subject to the terms and conditions hereunder. (b) Stericycle reserves the right to adjust the contract price to account for operational changes it implements to comply with documented changes in the law, to cover increases in the costs of fuel, insurance, or residue disposal, or to otherwise address cost escalation

ANSWER: Stericycle admits that certain of its contracts contain the terms and

conditions quoted in paragraph 18. Stericycle denies the remaining allegations of paragraph 18.

19.     A copy of the Standard Contract is attached as Exhibit A. The monthly service

fee as stated in the Contract was $139.00.

ANSWER: Stericycle admits that Exhibit A is a copy of a Steri-Safe service agreement

containing a monthly service fee of $139.00. Stericycle denies the remaining allegations of

paragraph 19.

20.     Plaintiff, James J. Mazur, DPM, electronically signed the Standard Contract and

sent a copy back to Stericycle on May 18, 2013.

ANSWER: Stericycle admits the allegations of paragraph 20.

21.     In entering into an agreement with Stericycle for waste removal, Plaintiffs relied

on the stated monthly service fee of $139.00 for four waste pick-ups per year. Plaintiffs also

relied upon the language in the Standard Contract's Terms and Pricing clause that the fee would

only increase for the purposes listed in Contract. These terms were materials to Plaintiffs and

would not have entered into the Standard Contract had they known that these representations

8

were false and that Stericycle intended to breach the Standard Contracts by charging undisclosed charges and increasing the agreed-upon price without notice of justification.

ANSWER: Stericycle denies the allegations of paragraph 21 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof. In addition, paragraph 21 contains legal conclusions to which no response is required; to the extent an answer is required, Stericycle denies the same.

22. In 2013 and 2014, Dr. Mazur was never charged the agreed-upon price of $139.00. Immediately after entering into the Standard Contract, Dr. Mazur was charged $241.00 in June 2013. (Exhibit B). No explanation was given for the increased fee.

ANSWER: Stericycle denies the allegations of paragraph 22.

23. In July 2013, Dr. Mazur received a monthly bill for $156.00. Again, no information or explanation was provided with the bill to explain the increased monthly fee.

ANSWER: Stericycle denies the allegations of paragraph 23.

24. Between August 2013 and November 2013, Dr. Mazur received monthly bills for the following amounts: $154.59 (August); $156.00 (September); $154.62 (October); and $156.00 (November). All of these monthly bills exceeded the $139.00 stated in the Standard Contract. As with the bills before them, no information or explanation for the price increase was offered or provided by Stericycle.

ANSWER: Stericycle denies the allegations of paragraph 24.

25. In January 2014, the monthly fee increased again to $182.00. Defendant billed Plaintiffs twice in February on the 1st and the 17th, each time for $182.00. No explanation was given for the price increase.

ANSWER:  Stericycle denies the allegations of paragraph 25.

26.     In Mach 2014, Defendant billed Plaintiffs $183.00 for medical waste removal. No explanation was provided for the price increase.  Beginning in June 2014, Plaintiffs were billed the following amounts for medical waste removal: $203.00 (June); $417.00 (July); $220.00 (September); $208.00 (October); $215.00 (November); and $249.00 (December).  As with all the prior bills, Defendant did not provide any explanation or justification for the price increases.

ANSWER:  Stericycle denies the allegations of paragraph 26.

27.     When Plaintiffs called Stericycle to complain about the unexplained increase. Stericycle told Plaintiffs that these rates were authorized in the Terms and Prices Clause of the Standard Contract.

ANSWER:  Stericycle admits that emails attached to the Complaint appear to have been between a Stericycle representative and Plaintiffs and appear to reference the phone call described in paragraph 27.  Stericycle denies the remaining allegations of paragraph 27 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

28.     In January 2015, Plaintiffs contacted Stericycle representative, Parag Deshpande, to complain about the increased fee and the undisclosed additional charges.  Mr. Deshpande indicated that Stericycle could offer a revised contract that would offer Dr. Mazur a better rate. This statement was false.  The supposed "revised" contract offered only two pick-ups per year for $145.59 per month.  (Exhibit C).

ANSWER: Stericycle admits that in January 2015, Plaintiffs contacted Stericycle representative Parag Deshpande to discuss their contract. Stericycle admits that a new proposal was submitted to Plaintiffs. Stericycle denies the remaining allegations of paragraph 28.

29.     On January 14, 2015, Dr. Mazur responded by email to Mr. Deshpande stating:

Per our conversation yesterday, the revised contract would be a better rate. However, the current agreement is at a lower rate.  Why in the world would I sign the newer agreement?  It is imperative that I lower what I pay.  I certainly will not extend the length of service.  Also, the new agreement provides far fewer services.  This is not acceptable.

(Exhibit D).

ANSWER:  Stericycle admits that emails attached to the Complaint appear to contain the statement referenced in paragraph 29. Stericycle denies the remaining allegations of paragraph 29 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

30.     On January 14, 2015, Mr. Deshpande replied by email stating:

Per your current agreement on file, you are subject to price increases.  That is why your current agreement on file does not reflect your current rate.  You may read more about price increases in section 2 of the terms and conditions.  We cannot negotiate the early termination penalties.  If you choose to cancel service, you will be responsible for early termination penalties.

(Exhibit E).

ANSWER:  Stericycle admits that emails attached to the Complaint appear to contain the statement referenced in paragraph 30. Stericycle denies the remaining allegations of paragraph 30 for lack of knowledge or information sufficient to form a belief as to the truth or falsity thereof.

4816-1842-9731.2

31.     This statement by Mr. Deshpande was also false.  In 2003, Stericycle pledged not to hold customers to long-term contracts as part of a settlement with the states of Arizona and Utah over alleged anti-trust violations.

ANSWER:  Stericycle denies the allegations of paragraph 31.

32.     Stericycle maliciously continued to add undisclosed charges to Plaintiffs' bills even after having this practice exposed by its former employee in 2008.

ANSWER:  Stericycle denies the allegations of paragraph 32.

### CLASS REPRESENTATION ALLEGATIONS

33.     Plaintiffs seek to represent a class defined as all individuals and entities in North Carolina who entered into the Standard Contract for medical waste pick-up services with Stericycle (the "Class").  Specifically excluded from the Class are all governmental entities, Stericycle, Stericycle's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

ANSWER:  Stericycle admits that Plaintiffs seek to represent a class of individuals and entities in North Carolina.

34.     Members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through Stericycle's records.

ANSWER:  Stericycle denies the allegations of paragraph 34.

35.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Stericycle (i) represented that it would not charge undisclosed charges under the Standard Contract, (ii) entered into the Standard Contract for a fixed price with Class members, (iii) breached the Standard Contract by charging Class members the undisclosed charges, and (iv) in so doing, violated the Illinois Consumer fraud and Deceptive Business Practices Act as well as the North Carolina Unfair and Deceptive Trade Practices Act.

ANSWER:  Stericycle denies the allegations of paragraph 35.

36.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs entered into the Standard Contract and were charged the Undisclosed Charges.

ANSWER:  Stericycle denies the allegations of paragraph 36.

37.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intent to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

ANSWER: Stericycle denies the allegations of paragraph 37.

38.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expenses to all parties and multiplies the burden on the judicial system

13

4816-1842-9731.2

presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

ANSWER: Stericycle denies the allegations of paragraph 38.

## CLAIMS FOR RELIEF

### Count I
### Breach of Contract

39. Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint as if fully alleged herein.

ANSWER: Stericycle incorporates by reference its answers to paragraphs 1 through 38 above.

40. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Stericycle.

ANSWER: Stericycle admits that Plaintiffs bring this claim individually and purport to bring this claim on behalf of a proposed class.

41. As discussed above, Plaintiffs and Class members entered into a legally binding Standard Contract with Stericyle, which is a 1 to 5-year fixed-price agreement calling for monthly or quarterly waste pick-up.

ANSWER: Stericycle admits that it entered into a contract with Plaintiffs. Stericycle denies the remaining allegations of paragraph 41.

42.     Stericycle made an offer to enter into an agreement by sending a copy of the Standard Contract to Plaintiffs and Class members.

ANSWER:  Stericycle admits it sent a copy of the contract to Plaintiffs. Stericycle denies the remaining allegations of paragraph 42.

43.     Plaintiffs and Class members accepted the Standard Contract by signing it and returning it to Stericycle.

ANSWER:  Stericycle admits that Plaintiff James Mazur signed the contract and returned it to Stericycle.  Stericycle denies the remaining allegations of paragraph 43.

44.     The Standard Contract provided for Plaintiffs and Class members to receive a fixed price in return for a long-term commitment.

ANSWER:  Stericycle denies the allegations of paragraph 44.

45.     Plaintiffs and Class members have performed all of their duties and obligations under the Standard Contract, except those excused by Stericycle's nonperformance.

ANSWER:  Stericycle denies the allegations of paragraph 45.

46.     Stericycle materially breached the aforementioned Standard Contract by depriving Plaintiffs and Class members of the benefit of their bargain by intentionally, purposefully, and/or negligently adding the Undisclosed and/or Unjustified Charges to their bills.

ANSWER:  Stericycle denies the allegations of paragraph 46.

47.     Stericyle misrepresented to Plaintiffs and Class members that the Undisclosed and/or Unjustified Charges were allowable under the Standard Contract because they correlated to escalating operating costs, though they did not.

ANSWER:  Stericycle denies the allegations of paragraph 47.

4816-1842-9731.2

48.     As a direct and proximate result of Stericycle's breach of the Standard Contract, Plaintiffs and Class members have and will continue to suffer damages.

ANSWER:  Stericycle denies the allegations of paragraph 48.

**Count II**
**Violations of the North Carolina Unfair and Deceptive Trade Practices Act**
**(N.C. Gen. Stat. § 75-1.1, *et seq.*)**

49.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint as if fully alleged herein.

ANSWER:  Stericycle incorporates by reference its answers to paragraphs 1 through 48 above.

50.     North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. State. §§ 75-1.1, *et seq.* ("NCUDTPA"), prohibits a person from engaging in "[U]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. GEN. STAT. § 75-16.

ANSWER:  Stericycle admits the allegations of paragraph 50.

51.     Stericyle' s acts and practices complained of herein were performed in the course of its trade or business and thus occurred in or affected "commerce," which includes Stericycle's medical waste disposal services as defined in N.C. GEN. STAT. § 75-1.1(b).

ANSWER:  Paragraph 51 contains legal conclusions to which no response is required; to the extent an answer is required, Stericycle denies the same.

52.     In the course of Stericycle's business, it knowingly failed to disclose and actively concealed material facts and made false and misleading statements regarding the prices it charged its customers, the reasons for price increases it imposed, and the amounts owed to it for services it performed.  In addition, Stericycle engaged in other unfair deceptive trade practice, including advertising its Steri-Safe service with the intent not to sell it at the prices advertised; disclosing and advertising its prices to customers in a manner calculated or tending to deceive Stericycle customers; omitting materials facts in describing its services and the prices it would charge; knowingly making false and misleading statements of fact regarding the supposed price reductions it offered to customers who complained about Stericycle's price increases, misrepresenting to customers the rights, remedies or obligations of the agreement between them, and invoicing Plaintiffs and Class members for amounts it knew were not rightfully owed under its agreements, thereby obtaining money through false and fraudulent representations.

ANSWER:  Stericycle denies the allegations of paragraph 52.

53.     Plaintiffs and members of the Class relied upon Stericycle's false misleading representations and omissions in deciding whether to enter into contracts with Stericycle or continue using Stericycle for medical waste collection and removal.

ANSWER:  Stericycle denies the allegations of paragraph 53.

54.     Stericycle's conduct proximately caused injuries to Plaintiffs and the Class.

ANSWER:  Stericycle denies the allegations of paragraph 54.

55.     Plaintiffs and the other Class members were injured as a result of Stericycle's conduct in that Plaintiffs and the other Class members overpaid for the medical waste disposal

services they purchased and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Stericycle's misrepresentations and omissions.

ANSWER:  Stericycle denies the allegations of paragraph 55.

56.    Plaintiffs, individually and on behalf of the other Class members, seek actual and treble damages pursuant to N.C. GEN. STAT § 75-16, all other damages and remedies allowed for by the statute, and an ward of attorneys' fees pursuant to N.C. GEN. STAT. § 75-16.1.

ANSWER:  Stericycle admits that Plaintiffs seek damages under the above cited statutes. Stericycle denies that Plaintiffs and/or purported class members are entitled to any such damages.

## Count III
### Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act
### (815 ILCS 505/1, *et seq.*)

57.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

ANSWER:  Stericycle incorporates by reference its answers to paragraphs 1 through 56 above.

58.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Stericycle.

ANSWER:  Stericycle admits that Plaintiffs bring this claim individually and purport to bring this claim on behalf of a proposed class.

59.    The Standard Contract Plaintiffs signed states the "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard to the conflicts of laws or rules of any jurisdiction.

ANSWER:  Stericycle admits the allegations of paragraph 59.

60.      The Standard Contract violates Illinois law.  Pursuant to 815 ILCS 505/10a, the Illinois Consumer Fraud and Deceptive Business Practices Act applies to business entities because the conduct complained of invokes trade practices addressed to market generally or otherwise implicates consumer protection concerns, and these claims meet consumer nexus test because the conduct involves trade practices directed to market generally or otherwise relates to consumer protection issues.

ANSWER:  Stericycle denies the allegations of the first sentence of paragraph 60. The second sentence of paragraph 60 contains legal conclusions to which no response is required; to the extent an answer is required, Stericycle denies the same.

61.      Pursuant to 815 ILCS 505/10a, the Illinois Consumer Fraud and Deceptive Business Practice Act applies to the Standard Contract, which is governed by the laws of the State of Illinois.

ANSWER:  Stericycle admits that the referenced contract is governed by the laws of the State of Illinois. The remaining allegations of paragraph 61 are legal conclusions to which no response is required; to the extent an answer is required, Stericycle denies the same.

62.      Stericycle made misrepresentations in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and is therefore subject to claims by Plaintiffs and the Class.

ANSWER:  Stericycle denies the allegations of paragraph 62.

63.      Stericycle's actions and omissions as alleged herein, constitute unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of the Illinois Consumer

Fraud and Deceptive Business Practices Act, and they misled customers, including Plaintiffs and the Class members.

ANSWER:  Stericycle denies the allegations of paragraph 63.

64.     Specifically, the immoral, unethical, oppressive, and unscrupulous actions and omissions of Stericycle and its sales representatives in marketing and selling its services were materials to Plaintiffs' and the Class members' decisions to enter into the Standard Contract, and thus create liability under this law.  These actions and omissions offended public policy by violating contract law.

ANSWER:  Stericycle denies the allegations of paragraph 64.

65.     Plaintiffs and the Class members sustained a substantial injury as a result of Stericycle's unfair and deceptive conduct, and seek injunctive relief to require Defendant to alter its conduct relating to charging unallowable price increases to its customers under the Standard Contract.

ANSWER:  Stericycle admits that Plaintiffs purport to seek injunctive relief. Stericycle denies that Plaintiffs are entitled to such relief and denies the remaining allegations of paragraph 65.

66.     Plaintiffs and Class members are also entitled to actual damages, reasonable attorneys' fees, and any other appropriate legal and equitable relief allowable under the Illinois Consumer Fraud and Deceptive Business Practice Act.

ANSWER:  Stericycle denies the allegations of paragraph 66.

4816-1842-9731.2

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class Members;

B.      For an order declaring the Defendant's conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.      For compensatory, treble and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiffs and the class his reasonable attorneys' fees and expenses and costs of suit.

ANSWER: Stericycle denies that Plaintiffs are entitled to any of the relief they seek in paragraphs (A) through (H) of the Prayer for Relief.

4816-1842-9731.2

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the allegations supporting certain of the Causes of Action asserted in the Complaint fail to state a claim upon which relief may be granted as required by Federal Rule of Civil Procedure 12(b). For example, Counts II and III fail to state a claim because Plaintiffs' allegations are grounded in fraud and Plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation. Specifically, with respect to Count I, Plaintiffs entered into contracts with Stericycle and Stericycle allegedly breached its contracts with them by imposing allegedly improper price increases prior to the applicable 10-year statute of limitations (735 ILCS 5/13-206). With respect to Counts II and III, the causes of action accrued prior to the applicable statutes of limitation, and there is no basis for tolling of those statutes of limitation. *See, e.g.*, Count II, four years (N.C. Gen. Stat. § 75-16.2); Count III, three years (815 ILCS 505/10a).

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent any of their causes of action are brought in a forum and/or pursuant to a state law that violates the forum-selection clause and/or choice of law provision contained in the applicable contract between Plaintiffs and Stericycle.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction because Plaintiffs submitted payments to Stericycle at various times pursuant to a

shared intent to settle a bona fide dispute over an unliquidated amount owed to Stericycle pursuant to allegedly improper price increases and/or surcharges, and Stericycle accepted those payments as full satisfaction of Plaintiffs' contractual obligations.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because a novation occurred when Plaintiffs at various times entered into a new and valid contract with Stericycle by mutual agreement that contained new pricing terms, and that extinguished their prior contract with Stericycle and any prior debt obligations owed to Stericycle thereunder.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel because, at various times, they intentionally paid outstanding invoices owed to Stericycle knowing that they contained allegedly improper price increases and/or surcharges, Stericycle reasonably relied upon those payments as evidence of Plaintiffs' consent to the price increases and/or surcharges and, as a result, Stericycle relied to its detriment and continued to provide services to Plaintiffs and incur the costs associated with those services pursuant to their contracts.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because at various times each of them intentionally and knowingly waived their right to contest the allegedly improper price increases and/or surcharges either when they contacted Stericycle to discuss the allegedly improper price increases and/or surcharges and thereafter agreed to the existing or new price terms in their contracts, or when they continued to pay their invoices to Stericycle and demand that Stericycle

continue to provide services to them pursuant to the contract without disputing the allegedly improper price increases and/or surcharges.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches because at various times each of them received invoices from Stericycle knowing that they contained allegedly improper price increases and/or surcharges and they engaged in undue delay and an unreasonable lack of diligence by failing to take any action to dispute the allegedly improper price increases and/or surcharges and, instead, continued to pay their invoices and acquiesce in the new prices for a significant period of time, which prejudiced Stericycle by leading Stericycle to continue to provide services to Plaintiffs and incur the costs associated with those services with the expectation that Plaintiffs would continue to pay the invoiced price for those services pursuant to their contracts with Stericycle.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Stericycle provided services for the benefit of Plaintiffs pursuant to their contracts, and, to the extent Stericycle's invoices contained allegedly improper price increases and surcharges, Plaintiffs ratified Stericycle's services and pricing by either expressly ratifying Stericycle's conduct or implicitly acquiescing in and failing to repudiate Stericycle's conduct.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the voluntary payment doctrine because, at various times, Plaintiffs received invoices demanding payment of amounts due to Stericycle for its services that included allegedly improper price increases and/or surcharges, and

4816-1842-9731.2

Plaintiffs voluntarily paid those invoiced amounts due to Stericycle under Stericycle's claim of right to payment for the services it provided with full knowledge of the facts surrounding the claim of right to payment and without compulsion or duress.

## ELEVENTH AFFIRMATIVE DEFENSE

Certain of the Plaintiffs' claims are barred, in whole or in part, because they previously entered into a valid agreement with Stericycle whereby they intentionally and knowingly released Stericycle from liability for any claimed damages due to allegedly improper fees or price increases.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to mitigate their own damages when they voluntarily paid Stericycle for invoiced amounts due that included allegedly improper price increases and/or surcharges without (i) attempting to have the charges reduced by contacting Stericycle to dispute or negotiate the allegedly improper price increases and/or surcharges, (ii) without attempting to terminate their contract with Stericycle to avoid the allegedly improper charges, and/or (iii) without attempting to obtain substitute arrangements for services from someone other than Stericycle.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent the contract between any Plaintiff and Stericycle contains a provision requiring all disputes between the parties be submitted to arbitration.

4816-1842-9731.2

Stericycle is presently without knowledge or information sufficient to form a belief as to whether it has additional, yet unasserted, affirmative defenses. Stericycle therefore reserves the right to assert additional affirmative defenses if it acquires knowledge or information supporting such defenses.

## PRAYER FOR RELIEF

WHEREFORE, Stericycle prays that Plaintiffs' Complaint and each and every cause of action alleged therein be dismissed with prejudice, that it be awarded its costs and attorneys' fees incurred herein and the Court award such other and further relief as it deems just in the premises.

DATED this 13th day of April, 2015.

STERICYCLE, INC.

By   /s/ Raymond J. Etcheverry

| | |
|---|---|
| Paul E. Chronis | Raymond J. Etcheverry (admitted *pro hac vice*) |
| Elinor L. Hart | Mark Glick (admitted *pro hac vice*) |
| Duane Morris LLP | Juliette P. White (admitted *pro hac vice*) |
| 190 S. LaSalle Street, Suite 3700 | Cory Sinclair (admitted *pro hac vice*) |
| Chicago, Illinois 60603 | Parsons Behle & Latimer |
| (312) 499-6700 | Salt Lake City, Utah 84111 |
| Email: PEChronis@duanemorris.com | (801) 532-1234 |
| EHart@duanemorris.com | Email: retcheverry@parsonsbehle.com |
| | mglick@parsonsbehle.com |
| *Counsel for Defendant Stericycle, Inc.* | jwhite@parsonsbehle.com |
| | csinclair@parsonsbehle.com |
| | |
| | *Counsel for Defendant Stericycle, Inc.* |

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of April, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

In addition, the following were served via U.S. mail:

Mona Lisa Wallace
John Hughes
Wallace & Graham, P.A.
525 North Main Street
Salisbury, NC 28144

/s/ Raymond J. Etcheverry

4816-1842-9731.2