**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: STERICYCLE, INC., STERI-SAFE ) | |
| CONTRACT LITIGATION ) | Case No. 13 C 5795 |
| ) | MDL No. 2455 |
| ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER[1]

What is now the MDL Panel action designated as MDL 2455 stems from the original filing of <u>Lyndon Veterinary Clinic v. Stericycle</u>, 13 C 2499 in this District Court on April 3, 2013. Telescoping the procedural steps that have led to the newly-filed (on October 17, 2017) proposed Settlement Agreement and related documents in MDL 2455 reveals the following relevant events:

1.  On August 6, 2013 the MDL Panel consolidated the <u>Lyndon</u> action for pretrial proceedings with additional acts and individual actions alleging similar or identical claims.

2.  On October 11, 2013 this Court entered an order appointing Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as interim lead counsel.

3.  On November 11, 2013 plaintiffs filed a First Amended Consolidated Complaint.

---

[1] All parenthetical references in this memorandum opinion and order (the "Opinion") are to sections (designated by Roman numerals) and paragraphs (designated by capital letters or by capital letters coupled with Arabic numerals) in the proposed Settlement Agreement tendered to this Court for preliminary approval.

4.  After considerable activities in the consolidated actions, on March 8, 2016 plaintiffs filed the Second Amended Consolidated Complaint, which has continued as the operative complaint in this action.

5.  On February 16, 2017 Hagens Berman was appointed as plaintiffs' Class Counsel, and this Court certified a nationwide (except for the states of Washington and Alaska) class of "Small Quantity" or "SQ" customers of Stericycle.

6.  On March 2, 2017 Stericycle filed a motion for reconsideration of that certification, a motion that has since then been continued by agreement of the parties up to the current date.

Regrettably a combination of events beyond the control of this Court, which it has detailed elsewhere on a number of occasions in a number of other cases, has left it without law clerks or other legal staffing, so that its current consideration of the October 17 "Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Approval of Notice Plan" (Dkt. No. 304) and its contemporaneously-filed supporting documents[2] cannot produce an opinion replete with citations to supporting authorities. But the narrative that follows here is based on the comprehensive nature of the parties' submissions, reflecting professionalism of the highest order, when measured by the appropriate yardstick -- a yardstick with which this Court is thoroughly familiar as the result of (1) its extensive experience with class actions (on both the

---

[2] In addition to "Plaintiffs' Memorandum in Support of [That] Unopposed Motion" (Dkt. No. 305), those supporting documents comprise Declarations of attorney Steve Berman (Dkt. No. 306), former Judge Wayne Andersen of this District Court (Dkt. No. 307) and analyst Patrick Kilbourne (Dkt. No. 308). More will be said about the first two of those declarants later in this Opinion.

plaintiff's side and the defendant's side of the "v." sign) during its three decades of practice before appointment as a District Judge and (2) then its extensive experience during its 37 years as a District Judge (the last 22 as a Senior Judge) maintaining a full civil calendar in this District Court. As indicated earlier in this paragraph, what the current submission contains is an impeccable covering of all the necessary bases, demonstrating the type of high quality work product that this Court anticipated when it designated Hagens Berman and its lead partner Steve Berman as Class Counsel.[3] What follows in this Opinion, then, treats with the issues in this action in the same sequence that they are dealt with in the Settlement Agreement. As the analysis here will reflect, in every instance the Settlement Agreement is clearly entitled to preliminary approval, with all relevant considerations having been anticipated by the parties and dealt with in totally responsible fashion.

In Section II Paragraph 9 Garden City Group, LLC (referred to for convenience as "GCG") is designated as the Class Action Settlement Administrator. Then Paragraph 12 identifies the "Class Period" as running from March 8, 2003 through the Preliminary Approval date of October 26, 2017. Later, Paragraph 20 defines what will become the Final Effective Date if the preconditions to final approval of the Settlement Agreement are satisfied. Even later, Paragraph 39 identifies this Court's former colleague, the Honorable Wayne Andersen

---

[3] It should of course be recognized that this Opinion addresses only the preliminary approval of the Settlement Agreement. As the ensuing detailed analysis reflects, that preliminary approval sets in motion a host of provisions that give full protection to every party in interest -- the Class Members represented by counsel in the other 20 cases that have been transferred to this Northern District of Illinois by the MDL Panel (see Ex. 1 to the Settlement Agreement) and all other Class Members. And that full protection expressly includes the right to object to final approval of the Settlement Agreement and, if final approval is granted hereafter, the right to opt out of the settlement.

("Andersen") as the Settlement Monitor referred to in Section III (he had previously assisted as an attempted mediator in the proceedings that eventuated in the current motion for preliminary approval).

Section III Paragraph A sets the proposed Settlement Amount at $295 million (including all costs) if the conditions for final approval of the Settlement Agreement are hereafter met. Then Paragraph D specifies that best efforts are to be exercised to begin payments to Class Members within 180 days after the Final Effective Date, with those best efforts to continue looking toward a completion of such payments within 270 days after the Final Effective Date. Later, Paragraph D.3 addresses the possible redistribution of some Class Members' uncashed checks to other Class Members who have received distributions, with a limited potential for cy pres treatment of any still unclaimed funds. Later in Section III, its provisions in Paragraphs E.1 through E.4 treat comprehensively with matters triggered by today's Preliminary Approval -- first the discontinuation of the challenged pricing practices previously followed by Stericycle must take place within 60 days after Preliminary Approval, then capped pricing increases are established after such Preliminary Approval, and (of particular importance) future pricing increases are limited for a period of three years after the Final Effective Date, with Andersen designated as Settlement Monitor from today's Preliminary Approval Date through the end of that three year period. In that respect Paragraph E.4 defines the responsibilities and procedures to be followed by Andersen in that capacity. Lastly, Paragraph E.5 sets out an appropriate arbitration provision to deal with the contingencies referred to in that paragraph.

Next, Section IV Paragraph A prescribes Service Awards to be paid to individual plaintiffs for their time and effort expended in the course of this litigation (up to a maximum of the greater of (1) $5,000 and (2) $100 per hour). Even more significantly, Paragraph IV.B

provides that the maximum fees awardable to Hagens Berman, subject to this Court's approval, may amount to $40 million, together with out-of-pocket costs up to a maximum of $2.8 million. Although this Court has not yet had the parties' input looking toward such a fee award, something that would take place only after final approval and the implementation of the Settlement Agreement, it is noteworthy that the $40 million potential maximum would amount to 13.6% of the $295 million Settlement Amount, which compares very favorably with the frequently approved fee awards in other class action matters ranging in the 30% through 33% range.[4]

    Next, Section V Paragraph A.1 allocates $175,000 (an amount that may be increased if necessary) to pay for the Notice and Administrative Costs required to move this action forward, with that amount to be increased if it proves necessary. In that respect Paragraph A.2 specifies that if no Final Effective Date were to be established, any portion of the designated amount that had not been expended would be refunded to Stericycle. As for the notice to Class Members, Paragraph C prescribes a Short Form Notice (see Settlement Agreement Ex. 4) to be transmitted beginning 30 days after today's Preliminary Approval, looking toward completion of that distribution within 51 days after the Preliminary Approval Date. Importantly, Paragraph E follows that provision by setting out a Long Form Notice to be provided to any Class Member who requests it. Section V concludes with two procedural requirements: Paragraph G, which calls for the statutorily prescribed notice (28 U.S.C. § 1715) that the Class Action Fairness Act

---

[4] This Court has long been concerned with the trend encountered in so many class actions that approve awards in that higher range, which ignore the origin of such high percentage awards -- awards predicated on a false analogy to percentage awards historically approved in individual contingent fee arrangements.

requires to be sent to appropriate state and federal officials, while Paragraph H details the Class Action Settlement Administrator's duties. Again no detailed discussion is needed.

Section VI Paragraph A specifies appropriate procedures for exclusion from the class and for individual opt-outs from class participation, available to any Class Members who choose not to participate in the distribution of the proposed settlement amount. Those provisions are both comprehensive and customary, so it is also unnecessary to discuss them in any detail.

Section VII contains the prescribed procedures for objections to the proposed settlement, procedures that are made available to any Class Member who has not filed a timely written request for exclusion from the class and who wishes to object to the fairness, reasonableness or adequacy of the Settlement Agreement, or to the proposed settlement amount, or to the award of attorney's fees and expenses, or to the individual Service Awards to plaintiffs under Section IV Paragraph A. Any such objections are required to be filed on or before a date to be ordered by this Court (it is expected that such date will be set at the time of today's hearing). In that respect, certain plaintiffs included in the MDL group and calling themselves the "Alabama Plaintiffs" have filed an October 16 motion (Dkt. No. 302) asking "to review proposed settlement agreement and be heard on its merits." That threshold approach is inappropriate, for the Alabama Plaintiffs are provided a full opportunity to raise their objections as specified in Section VI or Section VII.

Next, Section VIII contains customary provisions as to release and waiver. There is no need to deal with those in any detail either, for they are in the broad form appropriate to situations of the nature addressed in the proposed Settlement Agreement and this Opinion.

Next, Section IX Paragraph A sets out detailed provisions for a Preliminary Approval Order to be tendered by the parties to the Settlement Agreement, including the date and time for

a Fairness Hearing to determine whether the proposed Settlement Agreement should be finally approved by this Court. All of those provisions are classic ingredients of the procedures that must be followed to comply with Fed. R. Civ. P. 23 and the Constitution's Due Process Clause. Again there is no need to deal with those provisions with particularity, for they plainly provide every appropriate protection for the Class Members. Then Paragraph B similarly contains all appropriate provisions for a Final Order and Final Judgment if the Fairness Hearing results in a determination that the settlement is fair, reasonable and adequate. And once more the detailed provisions contained there could serve as a model prescribing the appropriate handling of a settlement of the nature described in the Settlement Agreement.

Next, Section X contains a potential escape hatch for "Modification or Termination of This Agreement" under the circumstances prescribed in that Section. Such a provision is essential to and is regularly made a part of any proposed settlement of the nature dealt with in this Opinion. Although this Court is frequently critical of the locution that a document "speaks for itself," the detailed provisions in Section X deserve that approbation.

Finally, Section XI, captioned "General Matters and Reservations," is also entitled to the same approbation referred to with respect to Section X. Once again those provisions represent well-drafted class action treatment of the highest order and need no detailed discussion.

## Conclusion

For the reasons stated at length in this Opinion:

1. "Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Approval of Notice Plan" (Dkt. No. 304) is granted.

2. By reason of that ruling, Stericycle's previously filed "Motion of Defendant Stericycle, Inc. for Reconsideration and Clarification"

(Dkt. No. 273), which has lain fallow since it was filed on March 2, 2017, has been superseded and is therefore denied as moot.

3. As for "Alabama Plaintiffs' Motion To Review Proposed Settlement Agreement and Be Heard on Its Merits" (Dkt. No. 302), it is denied without prejudice to the Alabama Plaintiffs' later exercise of the rights granted in the Settlement Agreement's Section VI or Section VII.

4. Any exercise of rights by Class Members (including the Alabama Plaintiffs) under Section Vi or Section VII must be filed on or before January 22, 2018.

This action will go forward on the basis previously set out in this Opinion as well as the detailed basis spelled out in the proposed Preliminary Approval Order submitted by Hagens Berman on October 17 (that Order is being issued contemporaneously with this Opinion).

_____
Milton I. Shadur
Senior United States District Judge

Date: October 26, 2017