UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| IN RE: STERICYCLE, INC., STERI-SAFE CONTRACT LITIGATION | No. 1:13-cv-05795<br>MDL No. 2455<br><br>Judge Milton I. Shadur |

**DECLARATION OF PATRICK J. KILBOURNE IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS**

I, Patrick J. Kilbourne, declare under penalty of perjury under the laws of the United States as follows:

1. I am a director at Berkeley Research Group, LLC ("BRG"). I was retained by Hagens Berman Sobol Shapiro LLP ("Class Counsel") to analyze information and data provided by Stericycle, Inc. ("Stericycle") in connection with the above-captioned litigation. I submit this declaration in support of Plaintiffs' Motion for Attorney's Fees, Costs, and Incentive Awards.

2. I was asked by Class Counsel to analyze Stericycle's data and determine whether it was possible to ascertain with reasonable certainty the savings that would accrue to class members as a result of Stericycle's cessation of the disputed API pricing practice as a result of the Settlement Agreement in this case. I was also asked to look at Stericycle's data to determine whether Stericycle had started transitioning customers away from its API policy while the lawsuit was pending, but before settlement, in response to litigation pressures.

3. In examining the data, and based upon my qualifications and training, which are thoroughly described in my previous submissions to the Court in this case, I was able to determine that the total savings to class members as a result of Stericycle's transition of

customers away from API and cessation of API practice as required by the Settlement is approximately $160 million.

4. In examining the data, I found that beginning in 2015, there was a noticeable decrease in the number of Stericycle SQ customers who were subjected to Stericycle's API policy. These customers were transitioned away from that policy to a fixed API of less than 18%, typically 8% or lower. I have assumed for purposes of my analysis that such changes were made as a reaction to this lawsuit. I was able to calculate the accumulated savings for customers who were exempted from API between January 2015 and December 2017, and those savings total approximately $7 million.

5. I also examined the data in an attempt to forecast the savings to class members attributable to Stericycle's cessation of its API pricing policy, capping annual price increases at 6%, as required by the Settlement Agreement. My understanding is that obligation commenced 60 days after preliminary approval, or late November 2017. For purposes of simplicity, I have used January 2018 as the beginning date for this estimate.

6. Because Stericycle contracts typically contain terms lasting from three to five years, I decided to use a conservative approach to my estimate, and assumed that the benefits of the increase cap would continue for a period of three years, ending in December 2020. Some class members with longer contracts or whose contracts automatically renew without a change in terms may benefit from the cap for a longer period. Others may choose to renegotiate their contracts early, or their contracts may expire by their terms sooner. However, these outliers should roughly offset one another, making my assumption of three years of benefits a reasonable one.

7. To make my forecast, I compared a forecast of what customers would be charged had Stericycle continued its disputed pricing practice with a forecast of what customers will be charged based on the increase caps instituted as a result of the litigation. The difference between those two numbers constitutes the savings to the class members. I found that for the period January 2018 through December 2020, the elimination of the disputed APIs will save the Class collectively approximately $153 million.

8. After I submitted my previous declaration submitted in support of the Motion for Preliminary Approval, Stericycle provided me with additional data covering the short period between September 2017 and the date the Settlement was granted preliminary approval. I examined that data in the same manner as I did the other data in this case, and provided updated figures to the Settlement Administrator. The changes made at that time were *de minimis*, consisting mostly of a handful of customers whose addresses had changed, and some very minor adjustments based on statement credits that had been issued in the interim. Nothing in that new data changed any of my conclusions or the average class member recovery estimates I provided in my prior declaration.

9. As before, using the 8% allowable price increase figure agreed to in the Settlement, the Gross Compensation Basis for the Class remains approximately $918 million. The settlement fund of $295 million represents approximately a 32% recovery of the Total Gross Compensation Basis.

10. The number of class members reported changed from my prior estimate as a result of changes in the way class members, including those with multiple locations, were categorized in order to ensure the widest possible notice (i.e., notices for some class members were sent to each service location rather than a central billing location). That change in the number of class

members, however, had no impact on the total Gross Compensation Basis for the Class, or the recovery for any Class Member.

Executed this 4th day of January, 2018, at Salt Lake City, Utah.

_____
PATRICK J. KILBOURNE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system on January 5, 2018. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

DATED: January 5, 2018          HAGENS BERMAN SOBOL SHAPIRO LLP

By:    */s/ Steve W. Berman*
       STEVE W. BERMAN